IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James Van Nguyen | CASE NO. _____ |
| *Plaintiff,* | |
| vs. | COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF |
| Patricia Foley, in her individual and official capacity, Jody Alholina, in her individual and official capacity, Nancy Martin in her individual and official capacity, Charli R. Vig in his individual and official capacity, Keith B. Anderson, in his individual and official capacity, Rebecca Crooks-Stratton, in her individual and official capacity, and Cole W. Miller, in his individual and official capacity. | JURY TRIAL DEMANDED |
| *Defendants.* | |

## INTRODUCTION

Plaintiff James Van Nguyen ("Mr. Nguyen") seeks prospective declaratory, injunctive, and other relief, as well as money damages, against the Defendants, Patricia Foley, Jody Alholina, Nancy Martin, Charli Vig, Keith B. Anderson, and Rebecca Crooks-Stratton and Cole W. Miller. This is an action alleging that the Defendants violated Mr. Nguyen's Constitutional Due Process Rights and the Stored Communications Act. Defendants' actions also constitute Abuse of Process and Intentional Infliction of Emotional Distress.

Mr. Nguyen is the father of A.J.N., his young daughter, who has been at the center of a custody dispute between Mr. Nguyen and his wife, Amanda Gail Gustafson ("Ms. Gustafson") since the couple filed for dissolution of marriage in October 9, 2014. Since the day A.J.N. was born, Mr. Nguyen has provided her with a loving, safe and permanent home.

A.J.N. is an Indian child and member of the Shakopee Mdewakanton Sioux Community ("SMSC").[1] Mr. Nguyen is not a member of the SMSC. As a result, Mr. Nguyen has been caught up in years of unjust and biased SMSC Child and Family Welfare investigations and court proceedings in SMSC Tribal courts, costing him immeasurable amounts of time, money, and energy.

Through their unconstitutional and tortious actions in the present case, the Defendants improperly assisted the SMSC Tribal Court and the SMSC Family and Children's Services Department to claim and retain jurisdiction over the proceedings regarding A.J.N. and had her deemed a ward of the SMSC tribal court. This severely limited Mr. Nguyen's parental rights and prohibited A.J.N. from the equal protection of state welfare services, endangering her well-being. Other intentional actions by the Defendants, described *infra*, have further hindered Mr. Nguyen's parental rights, requiring more time and money from Mr. Nguyen, and dealing him further hardship. Accordingly, Mr. Nguyen brings this action because he has been prejudiced, harassed and

---

[1] A.J.N was born from a tribal member, Amanda Gustafson, which qualified her to

treated unfairly by the Defendants, has been denied his Constitutional Due Process and parental rights,[2] and has had to resort to a biased tribunal for a remedy.

Mr. Nguyen, for his Complaint for declaratory, injunctive and other relief, states and alleges as follows:

## PARTIES

1.      Plaintiff James Van Nguyen ("Mr. Nguyen") is a citizen and resident of Ramsey County, Minnesota, and the father of A.J.N. Mr. Nguyen is not a member of the SMSC, nor is he an American Indian.

2.      A.J.N. is Mr. Nguyen and Ms. Gustafson's minor child. Ms. Gustafson and A.J.N. are SMSC tribal members.

3.      The Shakopee Mdewakanton Sioux Community ("SMSC") is a federally recognized Indian tribe located in Prior Lake and Shakopee, Scott County, Minnesota.

4.      The SMSC Business Council is a three-member panel of the Shakopee Mdewakanton Sioux Community Tribal Government, consisting of a Chairman, Vice-Chairman, and Secretary/Treasurer. The SMSC Business Council is responsible for the day-to-day operations of the tribe, and for implementing the decisions of the General Council.[3]

---

[2] Parental rights of fit parents are constitutionally protected. "So long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel v. Granville,* 530 U.S. 57, 65 (2000).

[3] According to the Shakopee Mdewakanton Sioux Community Tribal Government website, "The Business Council is charged with promoting the health, education and

5.     The SMSC Family and Children Services Department is an agency within the SMSC Tribal Government that "provides case management services for Community Member clients in tribal court."[4]

6.     At all times relevant, Charli Vig has served as the Chairman of the SMSC Business Council.

7.     At all times relevant, Keith B. Anderson has served as the Vice-Chairman of the SMSC Business Council.

8.     As recently as October of 2018, Rebecca Crooks-Stratton was Secretary/Treasurer of the SMSC Business Council.

9.     As recently as October of 2020, Cole W. Miller was Vice-Chairman of the SMSC Business Council.

10.     At all times relevant, Defendant Patricia Foley ("Ms. Foley") was a Child Welfare Officer for the SMSC Family and Children Services Department.

11.     At all times relevant, Defendant Jody Alholina ("Ms. Alholina") was the SMSC Tribal Court-Appointed Guardian Ad Litem for A.J.N.[5]

---

welfare of SMSC members and their families now and for generations to come. They also make decisions that shape the SMSC's role as a leading employer, Native American nation, and member of the broader community."

[4] https://shakopeedakota.org/government/smsc-departments/ "The department also provides advocacy to clients in tribal and county courts and provides outreach, resources, and education to parents. The department provides intervention and assistance to families in crisis; supervised visitation for clients and their children placed out of home; and parenting training and education to families. Family and Children Services also coordinates and facilitates SMSC emergency services, such as child care subsidy, food vouchers, gas vouchers, and referrals.'

12.    At all times relevant, Nancy Martin ("Ms. Martin") was the Director of the SMSC Family and Children Services Department.

## JURISDICTION

13.    This Court has subject matter jurisdiction over the claims asserted in this Complaint under 28 U.S.C. § 1331 (Federal Question), the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983 (the Civil Rights Act), 25 U.S.C. § 1302 (the Indian Civil Rights Act), and 18 U.S.C. 2701 (the Stored Communications Act). This Court has authority to award the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201– 02.

14.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, as Mr. Nguyen is a resident in this judicial district, the Shakopee Mdewakanton Sioux Community is located within this judicial district, and a substantial part of the events giving rise to this claim occurred in this district.

## FACTS

### *Mr. Nguyen Is Not A Member of the SMSC*

15.    Mr. Nguyen is not an enrolled member of the Shakopee Mdewakanton Sioux Community or any other Indian Community. Mr. Nguyen has never owned land on

---

[5] Under Minnesota Law, one of the responsibilities of a court appointed Guardian Ad Litem is to "conduct an independent investigation to determine the facts relevant to the situation of the child and the family." Minn. Stat. Ann. § 518.165 (West).

the Shakopee Mdewakanton Sioux Community Reservation and has never resided in "Indian Country" as defined by 18 U.S.C. § 1151.

16.    Ms. Gustafson is an adult enrolled member of the Shakopee Mdewakanton Sioux Community, but at all times relevant, with the exception of five months at a family member's residence, she has never resided within the SMSC property boundaries.

### *Marriage of Mr. Nguyen and Ms. Gustafson*

17.    Mr. Nguyen and Ms. Gustafson were engaged to be married in July of 2013.

18.    Ms. Gustafson became pregnant with A.J.N. in December of 2013. After moving to Minnesota, Mr. Nguyen and Ms. Gustafson resided in Ms. Gustafson's house in Prior Lake, Minnesota, which is not within the SMSC reservation.

19.    Before and throughout Mr. Nguyen's relationship with Ms. Gustafson, Ms. Gustafson has had a history of drug abuse and mental illness, has been convicted as a felon, has been incarcerated several times, and has a long criminal record. Upon information and belief, Ms. Gustafson used dangerous illicit drugs while she was pregnant with A.J.N., and has continued to use dangerous illicit drugs through the present. This is confirmed in Ms. Gustafson's Conservatorship File, as well as by an admission by Ms. Gustafson during a conservatorship hearing.  Ms. Gustafson also confirmed that she was using heroin and meth during her second pregnancy. (Gustafson's SMSC Conservatorship File in Case No. 618-08).

6

20.     On April 1, 2014, before the couple was married, Ms. Gustafson was charged and convicted with domestic assault and interference with a 911 emergency call, in Scott County, when Mr. Nguyen attempted to report to authorities that Ms. Gustafson was using heroin while four months pregnant. This was reported to both the SMSC and the Scott County Police Department, resulting in the SMSC placing Ms. Gustafson under SMSC conservatorship due to her drug problems and mental illness. She entered a drug rehabilitation program in California, where Mr. Nguyen and Ms. Gustafson owned another home.

21.     Upon conclusion of a paternity test, Mr. Nguyen and Ms. Gustafson were married on June 13, 2014, in Las Vegas, NV.

22.     Mr. Nguyen and Ms. Gustafson resided in Sherman Oaks, California until August 2014 when they moved to Minnesota.

23.     On June 24, 2014, Ms. Gustafson was charged with felony domestic battery in the State of California, after she inexplicably attacked Mr. Nguyen. The California court dropped the case after Ms. Gustafson was charged with felony domestic assault on October 4, 2014.

24.     Mr. Nguyen and Ms. Gustafson moved back to their home in Prior Lake, Minnesota in August of 2014.

25.     The couple's child, A.J.N., was born in Minneapolis, Minnesota on September 11, 2014.

26.    On September 30, 2014, the SMSC conservatorship of Ms. Gustafson, previously commenced by the SMSC in April of 2014, was ended.

27.    On October 4, 2014, Ms. Gustafson attacked Mr. Nguyen again, and she was charged with felony domestic assault in Scott County and interference with a 911 call.

28.    On October 6, 2014, Mr. Nguyen obtained from Scott County District Court an Order for Protection ('OFP") against Ms. Gustafson for A.J.N. and himself.

29.    After a three-day incarceration in the Scott County jail, Ms. Gustafson moved in with her aunt for a period of about five months. Ms. Gustafson's aunt's home was located within the SMSC property boundaries.

30.    Ms. Gustafson brought a Petition for Dissolution against Mr. Nguyen on October 9, 2014, in the Shakopee Mdewakanton Sioux Community Tribal court.

31.    On October 16, 2014, Mr. Nguyen petitioned for divorce in Scott County.

### The SMSC Business Council Retaliates Against Mr. Nguyen

32.    On November 5, 2014, through the actions and direction of Defendants Vig and Anderson, the SMSC Business Council issued a no-trespass order against Mr. Nguyen, expressly stating that the order was directly in response to Mr. Nguyen obtaining an Order for Protection for himself and A.J.N. from Scott County District Court against Ms. Gustafson. The SMSC Business Council never notified Mr. Nguyen that it was considering such an action, nor did the SMSC Business Council notify Mr. Nguyen of any hearing on the matter. There is no evidence that such a hearing ever occurred that

would have allowed Mr. Nguyen the opportunity to be heard, for a court to hear any valid arguments for the no-trespass order, or defend against such arguments.

33.    At the time Defendants Vig and Anderson issued the first no-trespass order, they were fully aware of Ms. Gustafson's abusive behavior, her criminal record, her mental illness, and her illegal drug abuse (including during the pregnancy of A.J.N.). They nevertheless issued the no-trespass order in direct retaliation against Mr. Nguyen for obtaining the state court Order for Protection against Ms. Gustafson, a SMSC Tribal member.

34.    Throughout the pursuit of Mr. Nguyen's legal remedies in tribal, state and federal court, and presumably as an attempt to frustrate Mr. Nguyen's legal efforts, under the direction of Defendants Vig, Anderson, Crooks-Stratton and Miller, the SMSC Business Council has issued new orders, continually prohibiting Mr. Nguyen from entering SMSC land and property.[6]

35.    A recent "NOTICE OF NO TRESPASS" was issued on October 23, 2019. The notice stated that Mr. Nguyen, "**SHALL NOT TRESPASS on lands of the Shakopee Mdewakanton Sioux Community, including its lands, facilities, enterprises and all residential areas EXCEPT for scheduled tribal court hearings and court ordered appointments or visits, for the following reason(s)**: Behavior threatening to the health and safety and general welfare of the Community. The length of

_____

[6] *See* Exhibit B, Shakopee Mdewakanton Sioux Community Notices of No Trespass, issued to James Van Nguyen.

this exclusion is **PERMANENT.** This Notice is a continuing notice to you, renewed daily." This notice was hand-delivered to Mr. Nguyen at the first day of trial in Case No. 867-17 for sanctions, and it was signed Defendants Vig, Anderson and Crooks-Stratton.[7]

36.    At the time of the most recent Notice of No Trespass, and during each of the previously issued Notices of No Trespass, Mr. Nguyen had cases pending before the SMSC Tribal Court, including the matters involving custody of A.J.N.

37.    Mr. Vig is well informed of the severity of Ms. Gustafson's mental illness and still issued the no-trespass notice. Prior to her relationship with Mr. Nguyen, Ms. Gustafson was in a romantic relationship with Mr. Vig's son, Austin Vig.  On September 20th 2008, Ms. Gustafson was placed on a 72-hour hold for intentionally crashing her vehicle into the house of Austin Vig because she thought she saw him with another woman.  He is also close friends with Ms. Gustafson's mother, Mary Jo Gustafson.

38.    Under the direction of Defendants Anderson, Miller and Crooks-Stratton, SMSC Business Council served Mr. Nguyen with yet another Notice of No Trespass on October 21, 2020, issued for one year. This means that Mr. Nguyen is still forbidden from entry onto SMSC property. This notice was signed by Defendant Anderson (as Chairman), Defendant Miller (as Vice-Chairman) and Defendant Crooks-Stratton (as Secretary/Treasurer).

---

[7] Ms. Crooks-Stratton did not sign the 2015 no-trespass order, as she was not yet serving as Secretary/Treasurer of the SMSC Business Council, yet she signed at least the two most recent orders.  Defendants Vig and Anderson have signed all of the no-trespass orders.

39.    The SMSC Business Council's no-trespass order has burdened Mr. Nguyen's right to parent A.J.N., because he has to violate the order to visit A.J.N. or take A.J.N. to the hospital located on SMSC tribal lands.

40.    More notably, this ensures that for over six years, Mr. Nguyen has had to have all matters involving custody over his child filed, heard and adjudicated by a tribunal for a tribe that has formally and continuously banned him from its lands, facilities, enterprises, and all residential areas.

### *Ms. Gustafson's Incarceration and Retaliatory Filing of Complaint with SMSC*

41.    Ms. Gustafson was jailed in Scott County on or about November 12, 2014. She was released on or about November 18, 2014.

42.    Less than eight (8) days following her release, and in retaliation for Mr. Nguyen obtaining an Order for Protection from Scott County for A.J.N. and himself, Ms. Gustafson filed a complaint against Mr. Nguyen with the SMSC Child Protection Services.

43.    In response, SMSC opened a child welfare case for A.J.N. The complaint from Ms. Gustafson was not reported to Scott County.

### *Custody Dispute Over A.J.N.*

44.    Mr. Nguyen's daughter, A.J.N., is at the center of a custody dispute resulting from the dissolution of the marriage of Mr. Nguyen and Ms. Gustafson.

45.    As previously stated, Ms. Gustafson has been arrested and jailed numerous times for illegal drug use and domestic violence, has been in treatment for her drug

addictions, and has been diagnosed with borderline personality disorder.[8] Ms.

Gustafson's drug abuse and mental health treatment are well documented in her

conservatorship file.

46.     As a result of the custody dispute, Patricia Foley, Child Welfare Officer for

Shakopee Mdewakanton Sioux Community Family and Children Services Department,

filed an Emergency Ex Parte Petition for "Child in Need of Assistance," in the Tribal

Court of the Shakopee Mdewakanton Sioux Community ("Tribal court"), seeking

determination that A.J.N. was in need of assistance and that she was a neglected child.[9]

### *Emergency Ex Parte Petition for Child In Need of Protection*

47.     On November 26, 2014, Patricia Foley filed the Emergency Ex Parte

Petition mentioned above on behalf of the SMSC Family and Children Services

Department, alleging that A.J.N. is a "child in need" and demanding that temporary and

legal custody be transferred to SMSC Family and Child Services. To find probable cause

that A.J.N. was a "child in need," Foley falsely alleged that Mr. Nguyen had "a history of

domestic assault wherein Mother was the victim." On December 4, 2014, an initial

hearing was held in SMSC Tribal court on the matter of A.J.N., where the court ordered

the opening of a file regarding the welfare of A.J.N. Between the time of the filing of the

---

[8] Borderline personality disorder (BPD) is a serious mental illness that centers on the inability to manage emotions effectively.  This difficulty can lead to impulsivity, poor self-image, stormy relationships and intense emotional responses to stressors. Struggling with self-regulation can also result in dangerous behaviors. National Alliance on Mental Illness: https://www.nami.org/Learn-More/Mental-Health-Conditions/Borderline-Personality-Disorder - Revised: December 2017.

[9] The Trial Court case number is CC-082-14.

petition and the final hearing on July 15, 2015, the SMSC Tribal court held several status hearings. The SMSC Family and Children Services Department also conducted an investigation into the matter of A.J.N.

### *SMSC Investigation Into the Matter of A.J.N.*

48.     Ms. Foley was responsible for acting as a neutral party social worker for the dissolution of marriage of Mr. Nguyen and Ms. Gustafson in SMSC Tribal court (No. 867-17).  In this role, Ms. Foley was charged with fairly and impartially investigating and reporting on the parenting abilities and day-to-day environments of the parties to a dissolution and custody case in the SMSC Tribal Court. Ms. Foley was also charged with the responsibility of representing the best interests of any children in such a proceeding. Ms. Foley's reports and recommendations carried great weight in determining custody in SMSC Tribal court proceedings.

49.     During the course of the investigation into this matter, Ms. Foley far exceeded her neutral status by communicating ex parte directly and regularly with Ms. Gustafson via text messaging and, upon information and belief, through other methods.

50.     Throughout the investigation, Mr. Foley repeatedly showed bias and prejudice against Mr. Nguyen, a non-member of the Shakopee Mdewakanton Sioux Community.

51.     During the investigation, Ms. Gustafson illegally obtained private, confidential and privileged email communications between Mr. Nguyen and his attorney.

52.     During the course of the investigation, Ms. Foley and the SMSC improperly relied on the private emails belonging to Mr. Nguyen that were illegally obtained by Ms. Gustafson. Information obtained through the intercepted emails between Mr. Nguyen and his legal counsel were openly discussed between Ms. Foley and Ms. Gustafson without notifying Mr. Nguyen that the communications had been obtained.[10]

53.     Several times throughout the text correspondence between Ms. Foley (who is required by rule and ethical code to be a neutral party social worker) and Ms. Gustafson, Ms. Foley disparaged Mr. Nguyen, clearly voicing a negative opinion of him, demonstrating her bias against him, and effectively assuming a role as an advocate for Ms. Gustafson.

54.     On January 7, 2015, Ms. Foley made the first of many strongly biased statements against Mr. Nguyen to Ms. Gustafson relating to the matter of A.J.N.: "…sounds like he's spiraling so he's apt to screw up soon."

55.     On January 8, 2015, Ms. Gustafson sent Ms. Foley photographs of "screen shots" of direct email correspondence between Mr. Nguyen and his attorney. Ms. Foley's response to Ms. Gustafson makes it clear that she had read Mr. Nguyen's confidential attorney-client communication, clearly violating law and applicable rules of ethics.

56.     Later on January 8, 2015, Ms. Foley admitted to Ms. Gustafson that she made up an excuse to avoid, and thereby cancel, an important scheduled meeting with

---

[10] Attorney Jessica Ryan, in her responsive pleading in SMSC Tribal Court File No. 890-12, admitted knowledge that these communications were intercepted. (See pg. 7, Respondent Jessica Ryan's Memorandum of Law in Opposition to Petitioner's Amended Rule 3(d) Motion.

Mr. Nguyen. Ms. Foley further stated that she was waiting for direction from "Jessica", presumably attorney Jessica Ryan, on how to proceed with the investigation into the matter of A.J.N.

57.     On January 9, 2015, once again Ms. Gustafson sent Ms. Foley confidential attorney-client communication between Mr. Nguyen and his attorney.

58.     On January 15, 2015, Ms. Gustafson stated to Ms. Foley: "Gary told me I can't go in his [Mr. Nguyen's] email anymore either. So I can't get any more info. He said it's illegal. He thought I was reading old emails."  On information and belief, "Gary" refers to Gary Debele, Ms. Gustafson's attorney, potentially showing evidence that Ms. Gustafson's attorney was also receiving the intercepted privileged attorney-client communication between Mr. Nguyen and his attorney.

59.     Even though Mr. Debele advised his client that it was illegal for her to go into Nguyen's email, Ms. Foley and Ms. Gustafson continued to work together to intercept Mr. Nguyen's confidential attorney-client communication and use the same for improper influence in the Tribal court proceedings.

60.     Later on January 15, 2015, Ms. Foley again asked Ms. Gustafson (via text message) for more of Mr. Nguyen's confidential attorney-client information.

61.     On January 16, 2015, Ms. Foley again received Mr. Nguyen's confidential attorney-client information from Ms. Gustafson (sent via text message).

62.     On January 21, 2015, Ms. Foley admitted to Ms. Gustafson that she was actively writing her report with input directly from Ms. Gustafson.

15

63.    Also on January 21, 2015, Ms. Foley gave Ms. Gustafson several pieces of information regarding Mr. Nguyen's disclosures of Ms. Gustafson's unaddressed drug charges in Florida.

64.    Ms. Foley then agreed with Ms. Gustafson to use the Tribal court process to attempt to get a psychological evaluation conducted on Mr. Nguyen, though she also admitted that Mr. Nguyen's therapist reported that Mr. Nguyen did not have a current diagnosis to give to Ms. Foley or the SMSC Family and Children Services Department. Ms. Foley continued her biased, prejudiced and unlawful conduct in the text messages, further showing her bias, by stating that she knows Mr. Nguyen's "type all too well." Ms. Foley continued to say she wanted to "zing him right back." Ms. Foley further agreed she "won't draw attention to [Ms. Gustafson's father's illegal drug use]."

65.    On February 3, 2015, Ms. Gustafson asked Ms. Foley for advice on how to avoid a mandatory urinary analysis (UA). Ms. Foley obliged with Ms. Gustafson's request.

66.    On February 10, 2015, Ms. Gustafson again asked Ms. Foley for advice on how to avoid a mandatory UA.  Ms. Foley told Ms. Gustafson to stay home from the UA. When Ms. Gustafson asked: "what about ua?"  Ms. Foley answered: "Don't worry about that. I'll take care of it."

67.    On February 18, 2015, after Ms. Gustafson asked about Ms. Foley's visit to Mr. Nguyen's home and whether "Jessica" (presumably Jessica Ryan) had called a lawyer in California, Ms. Foley stated, "Jessica was going to talk with Gary and try to

16

come up with something. Going to talk with her in a few…" It is implied from this message that Jessica Ryan and Gary Debele were working together to influence jurisdiction in the parties dissolution in favor of Ms. Gustafson, outside of any disclosures or interaction with Mr. Nguyen's attorney, Adam Blahnik.

68.     On February 25, 2015, Ms. Gustafson admitted that she stayed over at a friend's home and just woke up (at 11:14 am) and accordingly, that she would not be able to make another UA.  Ms. Foley responds, "I'll ask to have you put back on the list".

69.     On March 11, 2015, Ms. Gustafson avoided another UA and communicated this to Ms. Foley.

70.     On March 26, 2015, Ms. Gustafson states she will need to miss another UA, claiming that a realtor coming over to her house.  Ms. Foley finally told Ms. Gustafson that it was a priority that Ms. Gustafson comply with the UA.

71.     In contrast to her constant private communications with Ms. Gustafson, Ms. Foley's communications with Mr. Nguyen were comprised of one unannounced home visit, on November 20, 2014 and requesting a voluntary UA (stating it was standard procedure) and a follow up email.

72.     Ms. Gustafson's supervised visits with A.J.N were "supervised" by her Aunt Julie Soule or her parents, Joe and MaryJo Gustafson.

***SMSC & Ms. Foley's Omission of Evidence During Investigation of Child Welfare***

***Matter***

73.     Throughout Ms. Foley's investigation and in her report, she omitted relevant and material evidence, including but not limited to the following:

a.     Ms. Foley omitted several details about Ms. Gustafson's criminal history, including a felony drug conviction and substantial traffic violations.  (*See Exhibit C*, Scott County, Order of Detention, Oct. 6, 2014).

b.     Ms. Foley omitted that Ms. Gustafson has been charged with Gross Misdemeanor Domestic Assault on April 1, 2014 and Felony Domestic Battery against Mr. Nguyen on June 24, 2014. Notwithstanding the fact that Mr. Nguyen reported these charges to Ms. Foley, Ms. Foley intentionally ignored and omitted this criminal record.

c.     Ms. Foley omitted the Scott County Sherriff's Office booking page that shows booking for an Order for Protection violation by Ms. Gustafson.

d.     Ms. Foley omitted police records, in which Ms. Gustafson admits to striking Mr. Nguyen in the face. (*See Exhibit D, Criminal Domestic Abuse No Contact Order; see also Exhibit E, Petitioner's Affidavit and Petition for Order of Protection; see also Exhibit F, Emergency Ex Parte Order for Protection).*

e.     Ms. Foley omitted Ms. Gustafson's father's habitual drug use. Astonishingly, Ms. Gustafson's father is a frequent supervisor of A.J.N. (*See Exhibit A, Text Messages at 21).*

18

*SMSC & Ms. Foley Rely On and Provide False Information During Investigation of*

*Child Welfare Matter*

74.    Additionally, through the investigation in the matter of A.J.N., Ms. Foley relied on false information provided by Ms. Gustafson, to improve Ms. Gustafson's position in the proceedings, at the expense of Mr. Nguyen and A.J.N. This was done under the guise of providing ongoing support to the family.

75.    Ms. Gustafson falsely claimed that Mr. Nguyen has a history of substance abuse, a claim not at all supported by any report, criminal charge, or any other proper evidence in the record of any of the afore-mentioned cases.

76.    Ms. Gustafson falsely claimed that Mr. Nguyen had twice been seen with an erection while holding A.J.N., a claim not at all supported by any report, criminal charge, or any other proper evidence in the record of any of the afore-mentioned cases

77.    Ms. Foley, Ms. Alholina, Ms. Martin and the SMSC Family and Children Services Department failed to confirm or verify the information provided to them by Ms. Gustafson, and have provided no evidence to substantiate or support these false accusations. In fact, the relationship between Ms. Gustafson and Ms. Foley, shown in *Exhibit A*, *Text Messages at 18-21,* implies that Ms. Foley was actively working with and on behalf of Ms. Gustafson to cover up any confirmation or verification of these facts. Through these actions, Ms. Foley acted as Ms. Gustafson's advocate, thereby violating her responsibility as a neutral party in the matter.

78.     Ms. Foley continued to improperly rely on Ms. Gustafson, notwithstanding the fact that Ms. Gustafson is not a credible witness and has no veracity as a chronic drug addict and convicted felon.

### Guardian Ad Litem Report

79.     Ms. Alholina, the court appointed Guardian Ad Litem, included in her report that Mr. Nguyen has a history of substance abuse.  She reported this based solely on statements made by Ms. Gustafson, who has no credibility as a witness.

80.     Mr. Nguyen has never had a drug related arrest or conviction, nor has he ever been to treatment for drug abuse.  Additionally, he passed all random drug tests administered by the SMSC.

81.     The SMSC Family and Children Services Department and Ms. Alholina failed to take any action to confirm or verify the information provided to them by Ms. Gustafson, and they have provided no evidence to substantiate or support these false accusations.

### Determination That A.J.N. Is Deemed, and Shall Remain, A Ward of the Tribal Court

82.     On December 4, 2014 and January 23, 2015, hearings were held in the SMSC Tribal court, Judge John E. Jacobson presiding, regarding the opening of a child welfare case in the matter of Mr. Nguyen's child, A.J.N.

83.     In the December 4, 2014 hearing, Ms. Alholina (present in the courtroom) and Ms. Foley (appearing by telephone) were allowed to present testimony and be questioned on their findings and recommendations regarding the case of A.J.N. (*See page*

*5-25 of Exhibit G, Transcript of December 4, 2014 hearing with Judge John E. Jacobson*).

84.     Relying on falsified and biased reports, lacking any evidence whatsoever, as well as oral testimony by Ms. Alholina and Ms. Foley, Judge John E. Jacobson ordered that A.J.N shall stay a ward of the Tribal court. (*See page 27-28 of Exhibit H, Transcript of January 23, 2015 hearing with Judge John E. Jacobson*).

85.     During another hearing before Judge Jacobson on March 9, 2015, Mr. Nguyen's attorney presented his concerns of bias on the part of the SMSC Family and Children Services Department in keeping A.J.N.'s child welfare case open. (*See page 21 of Exhibit I, Transcript of March 9, 2015 hearing with Judge John E. Jacobson*).

86.     In another hearing on April 17, 2015, it was the request of both parents (Mr. Nguyen and Ms. Gustafson) that the welfare case be closed. Despite there being no claim that Mr. Nguyen was in any way an unfit parent, nor presentation of any evidence that he tested positive for any of his random UAs, nor any proof that Mr. Nguyen had ever violated any court recommendation or order, Judge Jacobson ordered that the case be left open for another ninety (90) days. (*See Exhibit J, Transcript of April 17, 2015 hearing with Judge Jacobson*).

87.     After further investigation, a hearing was set on July 15, 2015. At the hearing, all parties in attendance agreed that the child welfare matter be closed. Indeed, the court stated, "[y]es, based on everything that I've read and heard, I do [sic] now close this file. We'll get a written order out in a while, but it is effectively closed now. I

congratulate actually everybody in this room…The work that's done by the parents, by counsel, by the professionals working for the Community and the guardian ad litem really, you know, it's so impressive to see. And of course, what it means is, you know, better lives for the adults, but most fundamentally from the legal perspective that I have to have, a fine life for that beautiful little girl. That's a wonderful thing." (*See Exhibit K, Transcript of July 15, 2015 hearing with Judge E. Jacobson*).

88.    Based on the comments of the court, in the July 15, 2015 hearing, Mr. Nguyen reasonably expected to have his parental rights fully restored and that A.J.N would no longer be a ward of the Tribal court. On July 30, 2015, pursuant to the Indian Child Welfare Act, 25 § U.S.C. 1911(a), the Tribal court ordered that "temporary" legal and physical custody of A.J.N. be returned to Ms. Gustafson and Mr. Nguyen, closing the matter, but stunningly, also ordered that A.J.N. remain a ward of the court.  (Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child. 25 § U.S.C. 1911(a)).

89.    This Order from July 30, 2015 curtailed and denied Mr. Nguyen's protected parental rights without a sufficient evidentiary basis. Specifically, there was no finding by the Court that Mr. Nguyen ever placed A.J.N. in any danger at any time to warrant an Order by the Tribal court to have the Tribe retain jurisdiction over A.J.N. as a ward of the Court. There were, and continue to be, no findings that Mr. Nguyen is an unfit parent. Furthermore, there is no termination date provided in the Order, making A.J.N. a ward of the Tribal court indefinitely.

### *The Dissolution of the Marriage of Mr. Nguyen and Ms. Gustafson*

90.     Beginning in October 2015, Ms. Gustafson was incarcerated.

91.     In November 2015, SMSC reopened Ms. Gustafson's conservatorship (the first conservatorship having occurred when she was about 18 years old by reason of chronic drug abuse and mental illness). The petition identified her pending Scott County criminal matters and incarceration ultimately expressing concerns about her mental health, drug abuse and financial matters. As a result, the SMSC Tribal Court appointed guardians regarding "her person and estate."

92.     While incarcerated, Ms. Gustafson tested positive for opiates.

93.     In December 2015, Ms. Gustafson was sent to intensive inpatient treatment.

94.     In January 2016, Ms. Gustafson was kicked out of the treatment program because of misbehavior and returned to prison.

95.     In March 2016, while Ms. Gustafson was incarcerated, Mr. Nguyen purchased property in California.

96.     Mr. Nguyen and Ms. Gustafson planned to reside and be domiciled in California, while having another home in Bloomington, Minnesota.

97.     In August 2016, Ms. Gustafson was released from prison.  A few days later, the Tribal court closed the SMSC conservatorship.

98.     In September 2016, Ms. Gustafson was using heroin again.

99.     Ms. Gustafson was found using illicit drugs while caring for A.J.N.

100.    Mr. Nguyen, in California at the time to attend a wedding, asked his mother to remove A.J.N. from Ms. Gustafson's control at their Bloomington, Minnesota home. His mother did as he asked and his aunt helped.  Because his aunt is a teacher, she thought she was required under Minnesota law to report that Ms. Gustafson abused drugs around A.J.N. Accordingly, Mr. Nguyen's aunt notified Hennepin County child-protection services and Humboldt County California child-protection services.

101.    While Mr. Nguyen's mother and aunt attempted to remove A.J.N. from their Bloomington, Minnesota residence, Ms. Gustafson contacted an attorney who, in turn, threatened Mr. Nguyen's family members with kidnapping charges if they removed A.J.N. from the home.

102.    Ms. Gustafson and A.J.N. flew to join Mr. Nguyen in California. Ms. Gustafson decided to return to Minnesota to face additional incarceration for parole violations.

103.    Ms. Gustafson was incarcerated in February 2017.

104.     After this incarceration, Ms. Gustafson appeared to Mr. Nguyen to have stopped using drugs. Ms. Gustafson and Mr. Nguyen were back living together. But, in June 2017, Mr. Nguyen found Ms. Gustafson using heroin again during a stay in Minnesota.

105.    Upon his return to California, in June 2017, Mr. Nguyen filed for divorce in California and Ms. Gustafson was served with the divorce documents. Soon thereafter, because of Ms. Gustafson's drug addiction, Mr. Nguyen obtained a court order granting

24

him full custody of A.J.N. The petition for temporary full custody noted Ms. Gustafson's recent arrest at the Minneapolis-St. Paul Airport and drug use, among other matters.

106.    Ms. Gustafson threatened Mr. Nguyen by saying that she would have SMSC take A.J.N. away from him. This is not an isolated threat by Ms. Gustafson toward Mr. Nguyen. Including other such threats referenced in this Complaint, Mr. Nguyen has a criminal investigation on file with the Prior Lake Police Department investigating a purported murder-for-hire scheme by Ms. Gustafson against Mr. Nguyen. In response to this murder-for-hire effort, Mr. Nguyen was forced to enter Minnesota's Safe at Home Program in January of 2020. [11]

107.    After obtaining the California court order for temporary full custody, Mr. Nguyen told SMSC officials about Ms. Gustafson's drug abuse, arrests, and related matters, believing the conservatorship would be re-opened to protect him and A.J.N. Instead, on July 20, 2017, Ms. Gustafson filed for divorce with the SMSC Tribal Court.

108.    On August 7, 2017, because of an additional unsolicited email from Ms. Gustafson's divorce attorney dated August 4, 2017, without any notice or hearing as to the legal and factual issues presented to the court, the SMSC Tribal Court issued a written order, specifically noting that Ms. Gustafson had two conservatorship proceedings initiated by the SMSC. Thus, knowing of her drug addiction and incarceration, and

---

[11] Safe at Home, Minnesota's Address Confidentiality Program, is designed to help people who fear for their safety maintain a confidential address. Many times program participants are survivors of domestic violence, sexual assault, or stalking.

without any mention or consideration of Mr. Nguyen or his parental rights, the Court commanded A.J.N.'s return to Minnesota, asserted jurisdiction over the child, and continued the visitation of both parents.

109.    Consequently, Mr. Nguyen's case in California was dismissed in favor of tribal jurisdiction.

110.    Mr. Nguyen petitioned Hennepin County District Court for divorce on August 23, 2017 (Case No. 27-FA-17-5535), to avoid another biased and unfounded SMSC Court Order. However, Mr. Nguyen's petition was stayed, which resulted in the matter being permanently closed.

111.    In October 2017, Mr. Nguyen moved to dismiss the proceedings in Tribal Court, asserting that the court lacked personal and subject matter jurisdiction, because Mr. Nguyen is not a Community member, has never owned land on the Shakopee Mdewakanton Sioux Community Reservation, and has never resided in "Indian county" as defined by 18 U.S.C. § 1151. Mr. Nguyen also petitioned the US District Court of Minnesota to enjoin the divorce proceedings in SMSC Tribal Court, until the issue of SMSC Tribal Court jurisdiction over the matter could be decided. However, the petition for a preliminary injunction was stayed pending the outcome of an appeal in another case.

112.    On November 10, 2017, the SCMC Tribal Court issued an order denying Mr. Nguyen's motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction.

113.    Pursuant to Shak. T.C. R. Civ. P. 31(b), Mr. Nguyen filed a Notice of Appeal on December 4, 2017. On December 6, 2017, the Clerk of Tribal Court informed counsel for Mr. Nguyen that in order to determine whether a stay of the dissolution proceedings would be granted and to further address the basis for Mr. Nguyen's appeal, Mr. Nguyen should address whether his appeal is of right and/or a permissive appeal pursuant to Shak. T.C. R. Civ. P. 31. On December 8, 2017, Mr. Nguyen filed a Notice of Basis for Appeal and Request for Stay of Proceeding to provide the Court of Appeals of the Shakopee Mdewakanton Sioux Community ("Tribal Appellate Court"), as well as the Tribal Court, Mr. Nguyen's position regarding his appeal. The Notice of Basis for Appeal stated that Mr. Nguyen was appealing the November 10, 2017 order as a matter of right under the Collateral Order Doctrine, and alternatively, requested that the Tribal Court certify the November 10, 2017 decision to allow for Nguyen to seek an appeal by permission.

114.    On December 11, 2017, both the Tribal Appellate Court and the Tribal Court issued conflicting opinions regarding Nguyen's Basis for Appeal. The Tribal Appellate Court issued its decision first and requested that Mr. Nguyen brief the Court on the applicability of the Collateral Order doctrine. However, a few hours after the Tribal Appellate Court issued its order, the Tribal Trial Court issued a decision denying Mr. Nguyen's request for a stay of proceedings and Mr. Nguyen's request for certification (which prohibited Mr. Nguyen to appeal by permission) and provided an opinion that the Collateral Order doctrine does not apply to Mr. Nguyen's appeal, despite the previous

27

order issued by the Tribal Appellate Court. Notwithstanding the Tribal Trial Court's decision regarding the Collateral Order doctrine, Mr. Nguyen complied with the Tribal Appellate Court order and provided further clarification on the applicability of the Collateral Order doctrine.

115.    On January 30, 2018, the Tribal Appellate Court denied Mr. Nguyen's request for an appeal of right under the Collateral Order doctrine.

116.    On March 7, 2018, after the Tribal Appellate Court denied Mr. Nguyen's request for an appeal, Mr. Nguyen petitioned the United States District Court of Minnesota for an injunction against the SMSC Tribal Court proceedings, until the issues of personal and subject matter jurisdiction was resolved. However, the District Court denied Mr. Nguyen's motion until he had exhausted his remedies in SMSC Tribal Court.

### *SMSC's Restrictions on Mr. Nguyen's Parental Rights*

117.    Notably, the SMSC Tribal Court, since the commencement of Ms. Gustafson's SMSC divorce proceeding, has restricted Mr. Nguyen's ability to care for A.J.N. by limiting his visitation to SMSC boundaries and Scott County boundaries when Mr. Nguyen has a home in Bloomington, which is in Hennepin County, Minnesota.

118.    Under the Tribal Court order, Mr. Nguyen may not take A.J.N. out of Scott County. Unlike Ms. Gustafson, Mr. Nguyen does not have a home in Scott County, meaning the Tribal Court order technically bars him from taking A.J.N. to his home.

119.    Moreover, the Tribal Court order prevents A.J.N. from enjoying family outings, family gatherings, and family holidays, including celebrations of her birthday outside of Scott County.

120.    Additionally, the Tribal Court order prevents Mr. Nguyen from bringing A.J.N. for religious services to his family church in Dakota County.

121.    As noted in paragraph 99 and in footnote 9, Mr. Nguyen had to enroll in the Safe at Home program in January of 2020 in response to Ms. Gustafson's murder-for-hire effort. However, in response to this enrollment, Ms. Gustafson sought and was granted a Tribal Court order that Mr. Nguyen had to report his address to her. The Tribal Court was fully aware of Mr. Nguyen's enrollment in the Safe at Home program. Mr. Nguyen appealed this order to the Tribal appellate court and prevailed.  However, the trial court refused to comply with the appellate court and specifically, never allowed the vacation parenting time that Mr. Nguyen was ordered to have with A.J.N.

122.    The Tribal trial court also denied Mr. Nguyen parenting time with A.J.N. that was ordered by the Tribal appellate court for Tet, the religious and cultural celebration of the Vietnamese Lunar New Year.

123.    Despite the Tribal appellate court acknowledging the trial court needs to comply with the Safe at Home laws, the trial court again ignored the appellate court and Minnesota state law once again on March 8, 2021. The Tribal Court's Order directs all pleadings to be sent to an address contrary to Mr. Nguyen's legal, Safe at Home

address. The Tribal Court and court clerk has ignored Mr. Nguyen's legal address despite filings with the court and email's to the court clerk.

### SMSC's Continuing Wardship Over A.J.N. Puts Her At Risk

124.    Mr. Nguyen does not believe that the SMSC provides a safe or healthy environment for A.J.N. SMSC has a culture of drug and alcohol use and abuse, as demonstrated by Ms. Gustafson's example. It is one reason that Mr. Nguyen and Ms. Gustafson have not resided in SMSC.[12]

125.    Mr. Nguyen attempted to open a child welfare case with Hennepin County, which was referred to the tribe, as A.J.N. is a still deemed a ward of the tribe, notwithstanding the fact that Mr. Nguyen had never been found to be an unfit parent to A.J.N. Indeed, Scott County issued a maltreatment determination against Ms. Gustafson, but the SMSC Tribal Court or SMSC Child and Family Services, under the direction of Defendant Martin and with the knowledge of Defendants Martin, Alholinna and Foley, took no action. Ms. Gustafson's conservatorship proceedings extensively detail the many reports of child neglect and endangerment, which were all ignored by the SMSC, to Ms. Gustafson's favor. It should also be noted that Ms. Gustafson is currently on probation for three separate felonies, which include: fleeing the police when she was using heroin

---

[12] For instance, research shows that because of the success of the SMSC Mystic Lake Casino and Resort and the millions in dollars in per capita payments to SMSC adult members, SMSC member children can look forward to wealthy lives without ever opening a textbook.

and meth with her second child;[13] a felony possession of drugs conviction, which took place with A.J.N in her care;[14] and felony domestic assault.[15]

126.    Mr. Nguyen is also concerned about A.J.N.'s future if SMSC stays involved. Regardless of other possible educational alternatives that may be available to his child, Mr. Nguyen is concerned about the SMSC general attitudes and culture toward educational achievement, to which his child would be subject or otherwise exposed. For instance, Mr. Nguyen is concerned about the low high school graduate rates at SMSC.[16]

127.    Mr. Nguyen has a right, as a parent, to decide what is in the best interests of his child based upon opportunities that can be provided to the child and not based upon race, culture, religion, or nationality.

128.    As of the date of this filing, no court or person has determined, adjudicated, or otherwise found that Mr. Nguyen is an unfit parent.

129.    On August 10, 2020, the Court of Appeals of the Shakopee Mdewakanton Sioux Community issued a final Opinion and Order in Court File No. CTAPP049-20, thus exhausting Mr. Nguyen's remedies in Tribal Court.

---

[13] See Exhibit L Register of Actions, Case No. 70-CR-18-8610.

[14] See Exhibit M Register of Actions, Case No. 27-CR-17-31325.

[15] See Exhibit N Register of Actions, Case No. 27-CR-18-14695.

[16] Research also shows that SMSC's high school graduation rate is about 56%. For example, Ms. Gustafson was expelled from school at 7th grade for distribution of prescription drugs, to be home schooled only to never achieve a diploma nor have the desire to complete a GED program while in Shakopee Prison for women. Other tribes offer substantial monetary incentives for academic milestones for their members. On information and belief, SMSC does not do so resulting in dependence on SMSC per capita payments.

130.    As of the filing of this complaint, Plaintiff James Nguyen's daughter,

A.J.N. remains a ward of the SMSC Tribal Court.

## FIRST CLAIM FOR RELIEF

### Defendants' Actions Violate Mr. Nguyen's Fourteenth Amendment Substantive Due Process Rights

131.    Plaintiff repeats, realleges and incorporates by reference all preceding

paragraphs of this Complaint as if fully set forth herein, and further states the following.

132.    Plaintiff brings this 42 U.S.C. § 1983 claim against the Defendants for

violating his substantive due process rights as protected by the United States

Constitution.

133.    In order to state a claim under Section 1983, a plaintiff must allege: (1) A

violation of a right secured by the Constitution and laws of the United States; and (2) the

commission of the deprivation by a person acting under the color of state law. *West v.*

*Atkins*, 487 U.S. 42, 48 (1988)).

134.    The United States Supreme Court has long held that one of the most

fundamental substantive rights is a parent's right to control the upbringing of their

children.[17]

---

[17] *Meyer v. Nebraska,* 262 U.S. 390 (1923). The *Meyer* Court noted that liberty:
[D]enotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, to establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. *Id.* at 398 (citing Slaughter-House Cases, 83 U.S. 36, 62 (1872)).

135.    A parent's right to control the upbringing of their child includes a fundamental right to be free from governmental interference in a parent's choices in childrearing, childbearing, custody, and companionship of their children.

136.    Due to the federal, state and local policy of transferring custody cases to the SMSC Tribal Court, the Defendants in this matter have authority conferred under color of federal and state law.

137.    The Defendants have deprived Plaintiff of his fundamental due process rights by improperly retaining jurisdiction over the Matter of A.J.N. and forcing Plaintiff to exhaust all remedies in Tribal Court.

138.    The Defendants have deprived Plaintiff of his substantive due process rights by improperly using false information to abuse the Tribal Court system to open a child welfare case.

139.    The Defendants have deprived Plaintiff of his fundamental due process rights by making A.J.N. a ward of the court, and then banning Plaintiff from the jurisdiction through the SMSC 's baseless no-trespass orders, thus asserting improper control over Plaintiff's choices in the childrearing, childbearing, custody, and companionship with A.J.N.

140.    Defendants continue to assert control over Plaintiff's fundamental rights by maintaining jurisdiction over his custody matter and by continuing to keep A.J.N. a ward of the court.

141.    These violations by Defendants have caused damages to Plaintiff in an amount exceeding $75,000.

142.    Plaintiff seeks damages from the Defendants in an amount exceeding $75,000.

143.    Plaintiff requests from this Court an injunction requiring the SMSC Tribal Court to relinquish exclusive jurisdiction over the child custody matter of A.J.N., as the SMSC Tribal Court proceedings involving A.J.N. lack subject matter jurisdiction until the federal requirements of the Constitution and ICWA are met.

144.    Plaintiff also requests an order from this Court vacating the Order of the SMSC Tribal court holding A.J.N. as a Ward of the Court.

## SECOND CLAIM FOR RELIEF

### Defendants' Actions Violate Mr. Nguyen's Fourteenth Amendment Procedural Due Process Rights

145.    Plaintiff repeats, realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further states the following.

146.    Plaintiff brings this 42 U.S.C. § 1983 claim against the Defendants for violating his procedural due process rights protected by the United States Constitution.

147.    In order to state a claim under Section 1983, a plaintiff must allege: (1) A violation of a right secured by the Constitution and laws of the United States; and (2) the commission of the deprivation by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988)).

148.    Pursuant to the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property without due process of law."

149.    Due to the federal, state and local policy of transferring custody cases to the SMSC Tribal Court, the Defendants in this matter have authority conferred under color of federal and state law.

150.    Defendants' failure to objectively investigate the parents of A.J.N. in a fair and impartial manner, defendants' omission of evidence, and the inclusion of false evidence in favor of Gustafson and against Plaintiff, violated Plaintiff's and A.J.N.'s right guaranteed by 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment.

151.    Plaintiff was entitled to a fair and impartial hearing by an unbiased fact finder and adjudicator under the Fifth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment to the Constitution.

152.    Ms. Foley was responsible for acting as a neutral party social worker for determination of guardianship of A.J.N., the minor child of Nguyen and Gustafson in the matter of the dissolution of their marriage in SMSC Tribal court (No. 867-17).

153.    Ms. Foley's dual and simultaneous roles as neutral social worker and "friend and advocate to Gustafson" denied Plaintiff a fair and impartial hearing in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

35

154.    Ms. Foley also purported to act as the impartial social worker in the matter. However, Ms. Foley communicated privately, via text message, with Ms. Gustafson in a manner that was not impartial. Such communications were biased towards Ms. Gustafson as a member of the SMSC, and against Plaintiff.

155.    Once Ms. Foley became an advocate for Ms. Gustafson, it became impossible for Ms. Foley to maintain her role as a neutral social worker in order to review her own findings regarding the well being of A.J.N. Thus, she denied Plaintiff a fair and impartial hearing in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

156.    The SMSC Tribal court was responsible for acting as a neutral judge for the determination of guardianship of the couple's minor child, A.J.N., yet failed to do so, due to its reliance on false information and facts that were improperly obtained.

157.    These violations by Defendants have caused damages to Plaintiff in an amount exceeding $75,000.

158.    Plaintiff seeks damages from the Defendants in an amount exceeding $75,000.

## THIRD CLAIM FOR RELIEF

### Violation of Indian Civil Rights Act
### 25 *USC* § 1302

159.    Plaintiff repeats, realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further states the following.

160.    Section 1302 of the Indian Civil Rights Act Provides that an Indian tribe in exercising powers of self-government shall not…(2) violate the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures, nor issue warrants, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized. 25 U.S.C. § 1302.

161.    Section 1302 of the Indian Civil Rights Act provides that an Indian tribe in exercising powers of self-government shall not... (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law.  25 U.S.C. § 1302.

162.    To be effective, each of these guarantees and prohibitions [in the ICRA] must often operate in a civil context, and some, almost exclusively in such a context. *McCurdy v. Steele*, 353 F. Supp. 629, 635 (D. Utah 1973).

163.    The Shakopee Mdewakanton Sioux Community is an Indian tribe exercising powers of self-government under 25 U.S.C. § 1302.

164.    The Shakopee Mdewakanton Sioux Community Family and Children Services Department is an agency department of the SMSC Tribal Government.

165.    The Shakopee Mdewakanton Sioux Community Business Council is an agency department of the SMSC Tribal Government.

166.    Ms. Foley, acting on behalf of the Tribal Government, denied Plaintiff his right from unreasonable search and seizure when she, with the help of Ms. Gustafson,

repeatedly intercepted Plaintiff's private conversations, without a warrant supported by probable cause, to produce evidence that would be used against Plaintiff in the Tribal court's proceedings, to which Plaintiff and Ms. Gustafson were all parties.

167.    Ms. Foley, acting on behalf of the Tribal Government, denied Plaintiff the equal protection of the law without due process when she, with the help of Ms. Gustafson, intercepted attorney-client communications from Plaintiff and used the same to improperly influence the Tribal court's proceedings, to which Plaintiff and Ms. Gustafson were all parties.

168.    Ms. Alholina, acting on behalf of the Tribal Government, denied Plaintiff his right from unreasonable search and seizure when she, with the help of Ms. Foley and Ms. Gustafson, repeatedly intercepted Plaintiff's private conversations. This occurred without a warrant supported by probable cause, and led to the production of evidence that would be used against Plaintiff in the Tribal court's proceedings, to which Plaintiff, Ms. Gustafson were all parties.

169.    Ms. Alholina, acting on behalf of the Tribal Government, denied Plaintiff the equal protection of the law without due process when she, with the help of Ms. Foley and Ms. Gustafson, intercepted attorney-client communications from Plaintiff and used the same to improperly influence the Tribal court's proceedings, to which Plaintiff, Ms. Gustafson were all parties.

170.    These violations by Defendants have caused damages to Plaintiff in an amount exceeding $75,000.

171.   Plaintiff seeks damages from the Defendants in an amount exceeding $75,000.

## FOURTH CLAIM FOR RELIEF

### Violation of the Stored Communications Act
### (18 U.S.C. §§ 2701, *et seq*.)

172.   Plaintiff repeats, realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further states the following.

173.   The Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, et seq. (the "ECPA") broadly defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce. . . ." 18 U.S.C. § 2510(12). The Stored Communications Act incorporates this definition.

174.   Pursuant to the ECPA and Stored Communications Act ("SCA"), "electronic storage" means any "temporary storage of a wire or electronic communication incidental to the electronic transmission thereof." 18 U.S.C. § 2510(17)(A). This type of electronic storage includes communications in intermediate electronic storage that have not yet been delivered to their intended recipient.

175.   The SCA mandates, among other things, that it is unlawful for a person to obtain access to stored communications on another's computer system without authorization. 18 U.S.C. § 2701.

176.    Congress expressly included provisions in the SCA to address this issue so as to prevent "unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public." S. Rep. No. 99–541, 35, 1986 U.S.C.C.A.N. 3555, 3589.

177.    Defendant Ms. Foley, in her official capacity as an SMSC Child Welfare Officer, has violated 18 U.S.C. § 2701(a)(1) because she intentionally accessed Plaintiff's communications without authorization while in electronic storage. Ms. Foley had actual knowledge of, and benefited from, this practice, as it was her intention to benefit Ms. Gustafson's custody case.

178.    As a result of Defendants' conduct described herein and its violation of § 2701, Plaintiff has suffered injuries to his privacy rights by not being free to safely and confidentially communicate with his legal counsel without interception from opposing and supposedly neutral parties to a legal action.

179.    As a result of Defendants' conduct described herein and its violation of § 2701, Plaintiff has suffered injuries to his privacy rights as the communications intercepted by Ms. Foley were used to deprive Plaintiff of a fair proceeding regarding his daughter during a child welfare matter.

180.    Defendants' violations have caused damages to Plaintiff in an amount exceeding $75,000.

181.    Mr. Nguyen seeks damages from the Defendants in an amount exceeding $75,000.

40

## FIFTH CLAIM FOR RELIEF

### Abuse of Process

182.   Plaintiff repeats, realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further states the following.

183.   In order to succeed on a claim for the intentional tort of abuse of process, a Plaintiff must show (1) the existence of an ulterior purpose or motive underlying the use of process, and (2) some act in the use of the legal process not proper in the regular prosecution of the proceedings.

184.   The matter of A.J.N. was initiated by the Ex Parte Petition to protect the well being of A.J.N, through SMSC Tribal Court Procedure.

185.   The proper purpose of the proceedings was to determine whether or not A.J.N. was a child in need of assistance.

186.   Additionally, the proper purpose of the proceedings was to conduct a complete and thorough investigation into the fitness of both parents, Mr. Nguyen and Ms. Gustafson, present unbiased findings to the court, and for the court to make a determination on those findings.

187.   Ms. Foley improperly used the Tribal court proceeding in the matter of A.J.N. in order to accomplish a purpose for which the process was not designed. Namely, she wanted to assist Ms. Gustafson, a tribal member, in the perpetration of lies and deceit, in order to achieve a more favorable outcome for Ms. Gustafson in her Tribal Court proceedings.

41

188.    Ms. Foley, Ms. Alholina, Ms. Martin, through their work with the SMSC Family and Children Services Department used false information and improperly obtained communications in Tribal Court proceedings to sway jurisdiction of Plaintiff and Ms. Gustafson's dissolution proceeding pending in Scott County. In addition, the Tribal Court did not reciprocally recognize and enforce Scott County's District Court Order for Protection.

189.    Through the coordination and direction of Defendant Martin, Defendant Foley, and Defendant Alholina, the SMSC Family and Children Services Department's strategy on behalf of Ms. Gustafson was to fraudulently open a child welfare matter as District Court historically yields to Tribal Court jurisdiction in the dissolution matter if there is child welfare matter open.

190.    Through the coordination and direction of Defendant Martin, Defendant Foley, and Defendant Alholina, the SMSC Family and Children Services Department and its representatives used information that was illegally obtained, used false and biased information, and omitted information that did not suit their purposes, to make the recommendation and order that A.J.N. should remain a ward of the SMSC Tribal court indefinitely.

191.    As a result of Defendants' conduct as stated above, Defendants succeeded in accomplishing a result not within the scope of the investigation into A.J.N.'s welfare, and in doing so, violated Plaintiff's constitutional due process rights.

42

192.    Defendants' abuse of process has caused damages to Plaintiff in an amount exceeding $75,000.

193.    Plaintiff seeks damages from the Defendants in an amount exceeding $75,000.

## SIXTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

194.    Plaintiff repeats, realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, and further states the following.

195.    To succeed on a claim for intentional infliction of emotional distress, the Plaintiff must show (1) that the Defendant acted intentionally or recklessly; (2) that Defendant's conduct was extreme and outrageous; (3) that Defendant's act is the cause of the distress; and (4) that Plaintiff suffers severe emotional distress as a result of Defendant's conduct.

196.    Defendants Foley and Alholina intentionally intercepted private, confidential, attorney-client communications from an opposing party in a case and used the same for the gain of a third opposing party in the same matter.

197.    This action was not only improper and far outside the scope of Defendants Foley and Alholina's roles in the proceedings, the fact that it involved depriving a fit father of his parental rights shocks the conscience.

198.    Defendant Foley, Defendant Alholina, and Defendant Martin's intentional abuse of Plaintiff's constitutional right to due process, as well as their conduct described

43

herein above, abused Plaintiff in a manner that was extreme, outrageous, and unjustified. This caused Plaintiff to suffer physical and emotional distress for which Defendants are individually liable.

199.    This intentional infliction of emotional distress has manifested itself in physical pain and mental anguish to the Plaintiff, for which he has had to seek treatment and incur medical expenses.

200.    As a result of the conduct alleged above by Defendants, Plaintiff has suffered and will continue to suffer extreme emotional distress.

201.    As a result of the conduct alleged above by Defendants, Plaintiff is entitled to monetary damages and other such relief as deemed appropriate by this Court.

202.    The intentional abuse of Plaintiff was unjustified and done with actual malice and wanton indifference to and deliberate disregard for his fundamental rights. Plaintiff is thus entitled to exemplary damages.

203.    Defendants' tortious conduct has caused damages to Plaintiff in an amount exceeding $75,000.

204.    These violations by Defendants have caused damages to Plaintiff in an amount exceeding $75,000.

205.    Plaintiff seeks damages from Defendants in an amount exceeding $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court enter judgment in his favor

and against the Defendants as follows:

a.      A writ of habeas corpus to regain custody of A.J.N. pursuant to 25

U.S.C. §1303;

b.      A declaration that Defendants' actions are unconstitutional for

violation of Plaintiff's procedural and substantive due process rights;

c.      A declaration that Defendants' actions are in violation of the Indian

Civil Rights Act;

d.      A declaration vacating the Order of the SMSC Tribal Court holding

A.J.N. as a Ward of the Court;

e.      Awarding damages to Plaintiff against the Defendants;

f.      Awarding Plaintiff's costs and reasonable attorney's fees to the

extent permitted by law, including, but not limited to the Equal Access to Justice

Act;

g.      Awarding special damages according to proof;

h.      The right to seek Punitive/Exemplary damages upon proper motion

and according to proof;

i.      For pre-judgment interest; and

j.      For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff James

Nguyen demands a trial by jury in this action of all issues so triable.


Dated: April 14, 2021                    */s/Robert R. Hopper*

                                         Robert R. Hopper, Esq. (#208760)
                                         **Robert R. Hopper & Associates, LLC**
                                         333 South 7th Street, Suite 2450
                                         Minneapolis, MN 55402
                                         T: (612) 455-2199
                                         F: (612) 455-1689
                                         E: Robert.hopper@robertrhopper.com
                                         ***Attorneys for Plaintiff***

**VERIFICATION**

STATE OF MINNESOTA )

                        ) ss.

COUNTY OF HENNEPIN )

James Van Nguyen, the plaintiff in the above-entitled action, being first duly sworn, makes this verification that he has read the above and foregoing Complaint and knows its contents, and the same is true and to the best of his knowledge, information and belief and he believes it to be true.

Date: 4/14/2021

James Van Nguyen

Sworn before me on this 14 day of April, 2021

My commission expires on Jan 31, 2023

Signature of Notary

KRISTINA MARIE SCHULTZ
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2023

47