UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James Van Nguyen,                                    File No. 21-cv-991 (ECT/TNL)

          Plaintiff,

v.

Patricia Foley, Jody Alholinna,          **OPINION AND ORDER**
Nancy Martin, Charli R. Vig,
Keith B. Anderson, Rebecca Crooks-
Stratton, and Cole W. Miller, in their
individual and official capacities,

          Defendants.

Jason Scott Juran and Robert R. Hopper, Robert R. Hopper & Associates, LLC, Minneapolis, MN, for Plaintiff James Van Nguyen.

Richard A. Duncan, Joshua Todd Peterson, and Sarah Vandelist, Faegre Drinker Biddle & Reath LLP, Minneapolis, MN, for Defendants Patricia Foley, Nancy Martin, Charli R. Vig, Keith B. Anderson, Rebecca Crooks-Stratton, and Cole W. Miller.

Paul C. Peterson and Matthew D. Sloneker, Lind Jensen Sullivan & Peterson, PA, Minneapolis, MN, for Defendant Jody Alholinna.

          Plaintiff James Van Nguyen brought this case against employees and elected leaders of the Shakopee Mdewakanton Sioux Community and an independent guardian ad litem to challenge actions taken during Tribal Court child welfare proceedings concerning Nguyen's daughter, A.J.N., and no-trespass orders issued by the Community's Business Council. Nguyen asserts federal claims under 42 U.S.C. § 1983, the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1301 *et seq.*, and the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*, along with state-law claims for abuse of process and intentional

infliction of emotional distress.  Nguyen seeks damages, declaratory relief, a writ of habeas corpus, and attorneys' fees and costs.  Defendants Patricia Foley, Nancy Martin, Charles R. Vig, Keith B. Anderson, Rebecca Crooks-Stratton, and Cole W. Miller (who the Parties label the "Community Defendants" owing to their status as Community employees or elected leaders) have moved to dismiss Nguyen's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Defendant Jody Alholinna, A.J.N.'s guardian ad litem, has moved separately to dismiss Nguyen's claims under Rule 12(b)(6).  Defendants' motions will be granted.

I[1]

A

Nguyen and Amanda Gustafson are the parents of minor A.J.N.  Am. Compl. [ECF No. 4] ¶¶ 1–2.  Gustafson and A.J.N. are members of the Community, a federally recognized Indian tribe.  *Id.* ¶¶ 2–3.  Nguyen is not.  *Id.* ¶¶ 1, 15.

Nguyen and Gustafson became involved with the Community's court system in April 2014 when Gustafson was pregnant with A.J.N.  Nguyen and Gustafson had a domestic altercation after Nguyen reported Gustafson to Scott County, Minnesota law enforcement authorities for using heroin while she was pregnant.  *Id.* ¶ 20.  As a result of that incident, Gustafson was criminally charged and convicted of domestic assault and interference with a 911 call in Scott County, and the Community placed Gustafson under

---

[1]     The facts are drawn entirely from the operative amended complaint and documents embraced by it.  *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014); *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914–15 (8th Cir. 2015).

its conservatorship "due to her drug problems and mental illness." *Id.* Gustafson entered a drug rehabilitation program, and Nguyen and Gustafson then married. *Id.* ¶¶ 20–21. In September 2014, A.J.N. was born, and the Community's conservatorship ended. *Id.* ¶¶ 25–26. In October 2014, after Gustafson was charged for another domestic altercation, Nguyen obtained an order for protection from the Scott County District Court against Gustafson for A.J.N. and himself. *Id.* ¶¶ 27–28; *see id.*, Exs. C–F [ECF Nos. 1-4, 1-5, 7-1, 7-2].[2] Soon after, Gustafson filed a petition for dissolution of the marriage in the Tribal Court, and Nguyen filed a petition for the same in Scott County.[3] *Id.* ¶¶ 30–31. These petitions were later abandoned after Nguyen and Gustafson reconciled for a time. *See* Am. Compl. ¶¶ 97, 105, Ex. J [ECF No. 1-11] at 17–18. Regardless, these events set the stage for Nguyen's claims arising from proceedings in the Tribal Court, as well as those arising from the actions of the Community Business Council.

## B

In November 2014, allegedly in retaliation for Nguyen obtaining an order of protection, Gustafson filed a complaint against Nguyen with Community Child Protection

---

[2]     Nguyen filed an amended complaint as a matter of right in which he refers to exhibits A–O, an amended exhibit list, and a new exhibit O, ECF Nos. 4–4-2, but he did not refile exhibits A–N, which were attached to the original complaint (apart from filing redacted versions of Exhibits E and F). Nonetheless, those exhibits are embraced by the operative complaint because they are "documents whose contents are alleged in [that] complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citation omitted).

[3]     These petitions were later abandoned after Nguyen and Gustafson reconciled for a time. *See* Am. Compl. ¶¶ 97, 105, Ex. J at 17–18 [ECF No. 1-11].

Services.  Am. Compl. ¶ 43.  The Community Family and Children Services Department opened a child welfare case for A.J.N. but did not notify Scott County.  *Id.* ¶ 44.  On November 26, 2014, Patricia Foley, a Community child welfare officer, filed an emergency ex parte petition in the Tribal Court, seeking a determination that A.J.N. was a child in need of assistance and demanding transfer of temporary and legal custody of A.J.N. to the Department.  *Id.* ¶¶ 47–48.  On December 4, the Tribal Court granted the petition in part. *Id.*, Ex. G [ECF No. 1-8] at 25–29.  The Tribal Court declined to address custody, instead deferring to an order on that issue from the Scott County District Court in the pending dissolution proceedings, but determined that A.J.N. was a child in need of assistance and appointed Jody Alholinna as guardian ad litem for A.J.N.  *Id.*

Foley began a child welfare investigation.  *Id.* ¶¶ 48–49.  Nguyen alleges that Foley "far exceeded her neutral status by communicating ex parte directly and regularly with [Gustafson]" and "repeatedly showed bias and prejudice" against Nguyen, and "assum[ed] a role as an advocate" for Gustafson.  *Id.* ¶¶ 50–51, 54; *see id.* ¶¶ 55, 63–73, Ex. A [ECF No. 1-2].  During the investigation, Gustafson "illegally obtained private, confidential and privileged email communications" between Nguyen and his attorney and shared those emails with Foley and Alholinna.  Am. Compl. ¶¶ 52–53, 56, 58, 60–62, 170–71.  Foley prepared a report of her investigation for the Tribal Court.  *Id.*, Ex. O [ECF No. 4-2]. Nguyen alleges that Foley "omitted relevant and material evidence" from this report, particularly with respect to Gustafson's criminal history, and "relied on false information provided by [Gustafson] to improve [Gustafson's] position in the proceedings, at the expense of [Nguyen] and A.J.N."  Am. Compl. ¶¶ 74–79.  Nguyen makes similar

allegations with respect to a report filed by Alholinna. *See id.* ¶¶ 78, 80–82. Nguyen also alleges that Foley, Alholinna, and Nancy Martin, the director of the Community Family and Children Services Department, "failed to confirm or verify information provided to them" by Gustafson. *Id.* ¶¶ 78.

On January 23, 2015, the Tribal Court held a child welfare hearing. *Id.* ¶ 83, Ex. H [ECF No. 1-9]. Foley, Alholinna, and Martin were present, and Foley and Alholinna presented their recommendations. *Id.* The Tribal Court adopted Foley and Alholinna's recommendations and ordered that legal custody of A.J.N. remain with the Department. *Id.* The child welfare case remained open until a final hearing on July 15, 2015. *See* Am. Compl. ¶¶ 86–88, Exs. I–K [ECF Nos. 1-10–1-12] (transcripts of March 9, April 17, and July 15 hearings). The Tribal Court formally closed A.J.N.'s file at that hearing and subsequently issued a written order restoring temporary legal custody of A.J.N. to Nguyen and Gustafson. Am. Compl. ¶¶ 88–89, Ex. K. However, the Tribal Court also ordered that A.J.N. remain a ward of the Court, allowing it to retain jurisdiction over the matter. Am. Compl. ¶ 89. Nguyen alleges that the Tribal Court "curtailed and denied [his] protected parental rights without a sufficient evidentiary basis." *Id.* ¶ 90.

Between late 2015 and early 2017, Nguyen and Gustafson faced a number of challenges. Gustafson served multiple periods of incarceration and struggled with substance abuse, the Tribal Court reopened and later closed Gustafson's conservatorship, and Nguyen and Gustafson continued to dispute A.J.N.'s custody. *Id.* ¶¶ 91–105. In June 2017, Nguyen filed a petition for divorce in California, where he maintained a second

residence, and was granted temporary full custody of A.J.N.  *Id.* ¶ 106.  Nguyen then

contacted Community officials seeking to reopen Gustafson's conservatorship.  *Id.* ¶ 108.

On July 20, 2017, Gustafson filed a petition for dissolution in the Tribal Court.  *Id.*

The Tribal Court asserted its jurisdiction over A.J.N. and ordered that she be returned to

Minnesota.  *Id.* ¶ 109.  The case Nguyen filed in California was dismissed in favor of Tribal

Court jurisdiction.  *Id.* ¶ 110.  Nguyen filed a petition for dissolution in Hennepin County

District Court, but that petition was stayed pending Tribal Court proceedings and later

closed.  *Id.* ¶ 111.

Nguyen then sought to dismiss the dissolution case in Tribal Court for lack of

personal and subject-matter jurisdiction.  *Id.* ¶ 112.  The Tribal Court denied the motion.

*Id.* ¶ 113.  Nguyen appealed, arguing that the order was immediately reviewable or,

alternatively, that it should be certified for interlocutory review.  *Id.* ¶ 114.  The Tribal

Court and Tribal Court of Appeals rejected Nguyen's arguments.  *Id.* ¶¶ 115–16.  In early

2018, Nguyen filed an action in federal district court, seeking an injunction to prohibit the

Tribal Court from exercising jurisdiction over Gustafson's divorce petition.  *Id.* ¶ 117; *see*

*Nguyen v. Gustafson*, No. 18-cv-522 (SRN/KMM) (D. Minn.).  Judge Nelson dismissed

the case, finding that Nguyen had not exhausted his remedies in the Tribal Court.  *Id.*

The Tribal Court issued a final judgment in the divorce action on May 3, 2019.

Duncan Decl. Ex. D [ECF No. 25-1] at 77-114.[4]  The Court awarded joint legal custody of

---

[4]    Defendants filed several exhibits in connection with their motions to dismiss.  *See*
Sloneker Decl. Ex. A [ECF No. 19-1]; Duncan Decl. Exs. A–E [ECF No. 25-1].  These
exhibits are all copies of court filings or orders issued by the Community's Tribal Courts.
Nguyen also filed several exhibits with his memorandum in response to the Community

A.J.N. to Nguyen and Gustafson and ordered a co-parenting plan as part of that judgment. *Id.* In October 2019, Gustafson filed a motion to modify custody seeking sole legal and physical custody of A.J.N. based on Nguyen's noncompliance with the Tribal Court's prior order. *See id.*, Ex. E [ECF No. 25-1] at 133–46. The Tribal Court awarded sole custody to Gustafson and visitation to Nguyen. *Id.* The Tribal Court issued additional orders on April 3 and April 15, 2020, resolving outstanding issues primarily concerning parenting-time arrangements. *See* Juran Decl. Ex. A [ECF No. 35]. Nguyen appealed some portions of the April 3 order, and the Tribal Court of Appeals issued an order on August 10, 2020. Am. Compl. ¶ 130; *see* Juran Decl. Ex. C [ECF No. 34-3]. Nguyen alleges that the Tribal Court has "restricted [his] ability to care for A.J.N." in a variety of ways and that the Community's "continuing wardship over A.J.N. puts her at risk." Am. Compl. ¶¶118–131.

C

Separately, on November 5, 2014, in response to the order for protection Nguyen obtained against Gustafson, the Community's Business Council issued a "Notice of No Trespass" against Nguyen. *Id.* ¶ 32, Ex. B [ECF No. 1-3] at 1. The notice directed Nguyen

---

Defendants' motion. *See* Juran Decl. Exs. A–D [ECF Nos. 34-2–4, 35]. These exhibits are copies of two orders issued by the Tribal Courts, a letter Nguyen wrote to the Tribal Court, and a public resolution passed by the Business Council illustrating its responsibility for "administering the day to day affairs of the tribe." *See* Pl.'s Mem. in Opp'n to Cmty. Defs. [ECF No. 33] at 15. Considering "matters outside the pleadings" generally transforms a Rule 12 motion into one for summary judgment, but not when the documents are "necessarily embraced" by the pleadings. *Zean*, 858 F.3d at 526. Courts "additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Id.* (internal quotation marks and citations omitted). The documents submitted by the Parties fall within these categories.

not to trespass on the Community, "including its lands, facilities, enterprises and all residential areas EXCEPT for scheduled tribal court matters" for a period of one year.  *Id*. Nguyen alleges he was not given prior notice that the Business Council was considering such an order or notified of any hearing that would have provided him with the opportunity to contest the notice.  Am. Compl. ¶ 32.  Nguyen further alleges that the Business Council issued the notice "in direct retaliation" for obtaining an order of protection against a Community member and despite its knowledge of Gustafson's "abusive behavior, [] criminal record, [] mental illness, and [] illegal drug abuse."  *Id*. ¶¶ 33, 37–38.

According to Nguyen, this notice was the first of many no-trespass notices issued against him by the Business Council.  *Id*. ¶ 34; *see id.*, ¶¶ 35–36, 39, Ex. B at 2–3 (copies of no-trespass notices issued October 30, 2018, and October 23, 2019, for "[b]ehavior threatening to the health, safety and general welfare of the Community").  Charles Vig, Keith Anderson, Rebecca Crooks-Stratton, and Cole Miller were officers of the Business Council at various times throughout the time period that the Business Council issued these notices.  *See* Am. Compl. ¶¶ 6–9; *see also id*. ¶ 35 n.7.  Nguyen alleges that the Business Council "presumably as an attempt to frustrate [his] legal efforts . . . issued new orders, continually prohibiting [him] from entering SMSC land and property."  *Id*. ¶ 34.  The notices continued to provide exceptions for "scheduled tribal court hearings and court ordered appointments or visits."  *Id.*, Ex. B at 2–3.  At least one notice stated that Nguyen's exclusion was permanent.  *Id*. at 2.  A no-trespass notice issued October 21, 2020, remains in effect.  *Id*. ¶ 39.  Nguyen alleges that the no-trespass notices have "burdened [his] right to parent A.J.N., because he has to violate the order to visit A.J.N. or take A.J.N. to the

8

hospital located on SMSC tribal lands." *Id.* ¶ 40. Nguyen further alleges that the notices have "ensure[d] that for over six years, [he] has had to have all matters involving custody over his child filed, heard and adjudicated by a tribunal for a tribe that has formally and continuously banned him from its lands, facilities, enterprises, and all residential areas." *Id.* ¶ 41.

### D

On April 14, 2021, Nguyen filed this action. ECF No. 1. He asserts six claims in the operative amended complaint: (1) a § 1983 claim based on violations of his substantive due process rights under the Fourteenth Amendment, Am. Compl. ¶¶ 132–45; (2) a § 1983 claim based on violations of his procedural due process rights under the Fourteenth Amendment, *id.* ¶¶ 146–60; (3) a violation of § 1302 of the ICRA, *id.* ¶¶ 161–74; (4) a violation of § 2701 of the SCA, *id.* ¶¶ 175–84; (5) abuse of process, *id.* ¶¶ 185–97; and (6) intentional infliction of emotional distress, *id.* ¶¶ 198–210. Nguyen seeks a writ of habeas corpus to regain custody of A.J.N., declarations that Defendants violated his rights under the United States Constitution and the ICRA, vacatur of the Tribal Court's order declaring A.J.N. a ward of the court, damages, pre-judgment interest, costs, and attorneys' fees. *Id.* at 46–47.

### II

The Community Defendants argue that sovereign immunity requires the dismissal of Nguyen's claims. Cmty. Defs.' Mem. in Supp. [ECF No. 24] at 10–17. "[S]overeign immunity is a jurisdictional question." *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000) (citation omitted). A court reviewing a motion to dismiss for

lack of subject-matter jurisdiction must first determine whether the movant is making a "facial" attack or a "factual" attack. *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). The Community Defendants present a facial attack to subject-matter jurisdiction because they accept as true all of Nguyen's factual allegations concerning jurisdiction. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In analyzing a facial attack, the Court "restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted).

Absent authorization by Congress or an express waiver, Indian tribes are immune from suit. *Fort Yates Public Sch. Dist. No. 4 v. Murphy ex rel. C.M.B.*, 786 F.3d 662, 670–71 (8th Cir. 2015) (citing *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998)) (explaining a tribe's sovereign immunity not only bars suits against the tribe for damages but also for injunctive and declaratory relief). A tribe's sovereign immunity also "may extend to tribal agencies." *Hagen*, 205 F.3d at 1043. However, it "does not necessarily protect [t]ribal officials from suit." *Fort Yates*, 786 F.3d at 671 n.8. Sovereign immunity "protect[s] tribal employees who act in their official capacities and within the scope of their authority in a suit for damages because an award of money damages would affect the tribe itself." *Watso v. Piper*, No. 17-cv-562 (ADM/KMM), 2017 WL 9672393, at *10 (D. Minn. Dec. 5, 2017), *report and recommendation adopted*, 2018 WL 1512059 (D. Minn. Mar. 27, 2018). However, the exception established in *Ex Parte Young*, 209 U.S. 123 (1908), "applies to the sovereign immunity of Indian tribes, just as it does to state

sovereign immunity." *N. States Power Co. v. Prairie Island Mdewakanton Sioux Indian Cmty.*, 991 F.2d 458, 460 (8th Cir. 1993) (citation omitted).  Accordingly, "tribal immunity does not bar . . . a suit for injunctive relief against *individuals*, including tribal officers, responsible for unlawful conduct." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 796 (2014) (emphasis in original); *see Watso*, 2017 WL 9672393, at *10 (noting this exception does not allow for judgments against tribal officials declaring they violated federal law in the past).

Nguyen alleges that the Community is a federally recognized Indian tribe.  Am. Compl. ¶ 3; *see also Smith v. Babbitt*, 100 F.3d 556, 557–58 (8th Cir. 1996).  He does not allege that the Community has waived its immunity or that Congress has otherwise authorized suit against the Community.  Nguyen also alleges that each of the Community Defendants is a current or former official or employee of the tribe or a tribal agency.  Am. Compl. ¶¶ 4–10, 12.  Accordingly, Nguyen may not pursue claims against the Community Defendants in their official capacities for damages or declarations that they previously violated the law.

Nguyen seeks some relief that properly may be characterized as injunctive.  Nguyen seeks a writ of habeas corpus pursuant to 25 U.S.C. § 1303 to regain custody of A.J.N. Am. Compl. at 46 ¶ a; *see Booth v. State of Md.*, 112 F.3d 139, 144 (4th Cir. 1997) ("[A] petition for a writ of habeas corpus falls squarely under *Ex Parte Young*—it is an action brought against state officials to prevent the continued detention of a prisoner pursuant to an unlawful conviction or sentence."); *Brennan v. Stewart*, 834 F.2d 1248, 1252 n.6 (5th Cir. 1988) (stating habeas claims under 28 U.S.C. § 2254 "pass muster under the Eleventh

11

Amendment because the habeas theory of a civil suit against the bad jailer fits perfectly with the *Ex parte Young* fiction").  Nguyen also seeks vacatur of the Tribal Court's order declaring A.J.N. a ward of the court.[5]  *See* Am. Compl. ¶ 145 and at 46 ¶ d.  The Community Defendants concede that Nguyen requests these "two forms of prospective injunctive relief," but nonetheless argue that Nguyen's claims do not come within the exception to sovereign immunity because the injunctive relief Nguyen requests is not available because "Nguyen has failed to exhaust his Tribal Court remedies."  Cmty. Defs.' Mem. in Supp. at 13–14.  This argument goes to the merits of Nguyen's claims, *i.e.*, whether he has stated a claim upon which relief can be granted, not jurisdiction.  *See Strate v. A-1 Contractors*, 520 U.S. 438, 451 (1997) (recognizing that exhaustion of tribal court remedies is "a matter of comity, not [] a jurisdictional prerequisite" (citation omitted)).  Accordingly, there is subject-matter jurisdiction over Nguyen's official-capacity claims only to the extent he seeks injunctive relief.[6]

---

[5]  Elsewhere in his amended complaint, Nguyen requests an injunction requiring the Tribal Court "to relinquish exclusive jurisdiction over the custody matter of A.J.N., Am. Compl. ¶ 144, but he does not make this request in his "Prayer for Relief."  It is not entirely clear to what extent, if any, this relief differs from his request to vacate the order declaring A.J.N. a ward of the court.

[6]  Although Nguyen complains about the effect of the no-trespass notices issued by the Business Counsel on his ability to parent A.J.N., as well as a lack of due process with respect to their issuance, Nguyen does not challenge the Community's authority to exclude non-members, *see Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 141 (1982); *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 333 (1983), and he does not seek any type of injunctive relief with respect to the notices, such as their modification or recission.  *See* Am. Compl. ¶¶ 158, 172; Pl.'s Mem. in Opp'n to Cmty. Defs. [ECF No. 33] at 11–12.

The Community Defendants argue that sovereign immunity bars Nguyen's claims for damages in their entirety because they are, in essence, official-capacity claims. Cmty. Defs' Mem. in Supp. at 14–17. "The identity of the real party in interest dictates what immunities may be available." *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017). In an official-capacity claim, "[t]he real party in interest is the government entity, not the named official" and "the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Lewis*, 137 S. Ct. at 1291. In contrast, "[p]ersonal-capacity suits . . . seek to impose *individual* liability upon a government officer" and "the real party in interest is the individual, not the sovereign." *Id.* at 1288, 1291 (holding "in a suit brought against a tribal employee in his individual capacity, the employee, not the tribe, is the real party in interest"). "[S]overeign immunity does not erect a barrier against suits to impose individual and personal liability." *Id.* at 1291 (quotation omitted). "That an employee was acting within the scope of his employment at the time the tort was committed is not, on its own, sufficient to bar a suit against that employee on the basis of tribal sovereign immunity." *Id.* at 1288. Courts "must determine in the first instance whether the remedy sought is truly against the sovereign" rather than "simply rely[ing] on the characterization of the parties in the complaint." *Id.* at 1290.

Here, as in *Lewis*, the Community Defendants are the real parties in interest with respect to Nguyen's individual-capacity claims. Nguyen seeks monetary relief from the Community Defendants in their personal capacities, not a judgment that will operate against the tribe. The fact that the Community Defendants were acting within the scope of

their employment at the time of their allegedly unlawful conduct does not implicate tribal sovereignty.

Relying on pre-*Lewis* case law from other circuits, the Community Defendants argue that the Community is the real party in interest with respect to all of Nguyen's claims against them because success on his claims would result in interference with tribal governance. They contend that Nguyen's allegations against the Business Council, which center on their issuance of no-trespass notices, "rest on actions they took on behalf of the Community, exercising the Community's executive function, which Nguyen seeks to curb or restrain." Cmty. Defs.' Mem. in Supp. at 16. Similarly, they assert that Nguyen's claims against Foley and Martin are based on their exercise of "the core governmental function of protecting a Community member child" and that the remedies sought by Nguyen would "restrain [their] actions as Department officials—as well as actions taken by the Tribal Court." *Id.* at 16–17. But *Lewis* makes clear that courts should look to the remedy sought to determine the real party in interest. By that measure, Nguyen's claims for damages against the Community Defendants in their individual capacities are not barred by sovereign immunity.

### III

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl.*

14

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A

### 1

The Community Defendants argue that Nguyen's § 1983 claims against them must be dismissed because Nguyen has not alleged that they acted under color of state law. Cmty. Def.'s Mem. in Supp. at 19–21. "To survive dismissal of [a] section 1983 cause of action, [a plaintiff] must have sufficiently alleged the [defendant] deprived them of a right 'secured by the Constitution and laws' of the United States, and the deprivation was caused by a person or persons acting under color of state law." *Creason v. City of Washington*, 435 F.3d 820, 823 (8th Cir. 2006) (citing 42 U.S.C. § 1983 and *Flagg Bros, Inc. v. Brooks*, 436 U.S. 149, 155 (1978)). It is settled law that a defendant acting under tribal authority is not acting under color of state law and that "[n]o action under 42 U.S.C. § 1983 can be maintained in federal court for persons alleging deprivation of constitutional rights under color of tribal law." *Coleman v. Duluth Police Dept.*, No. 07-cv-473 (DWF/RLE), 2009 WL 921145, at *23–24 (D. Minn. Mar. 31, 2009) (quoting *R.J. Williams Co. v. Fort Belknap Hous. Auth.*, 719 F.2d 979, 982 (9th Cir. 1983)) (collecting cases); *Charland v. Little Six, Inc.*, 112 F. Supp. 2d 858, 866 (D. Minn. 2000), *aff'd* 13 Fed. App'x 451 (8th Cir. 2001); *see Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978) (recognizing that

Indian tribes are separate sovereigns predating the Constitution, and therefore, are "unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority").

Nguyen does not allege that the Community Defendants are state actors, that they ever acted pursuant to any state authority, or that they ever acted in concert with any state actors. To the contrary, he alleges that the Business Council is a panel of the Tribal Government that "is responsible for the day-to-day operations of the tribe, and for implementing the decisions of the General Council" and that the Family and Children Services Department is an agency of the Tribal Government that "provides case management services for Community Member clients in tribal court." Am. Compl. ¶¶ 4–5. Nguyen further alleges that the Community Defendants are all either members of the Business Council or employed by the Family and Children Services Department and that they deprived him of his constitutional rights while acting in those roles. The only plausible inference is that the Community Defendants acted under the color of tribal law. Nguyen alleges that some Community Defendants "have authority conferred under color of federal and state law" as a result of "the federal, state and local policy of transferring custody cases to the SMSC Tribal Court." Am. Compl. ¶¶ 137, 150; *see* Pl.'s Mem. in Opp'n to Cmty. Defs. [ECF No. 33] at 13. This argument is not persuasive. Nguyen's reference to a "policy" is too vague to be plausible. If that weren't so, Nguyen does not

plausibly allege how such a "policy" could have authorized or guided any action taken in Tribal Court after such a transfer.  Nguyen cannot maintain his § 1983 claims.[7]

2

The Community Defendants seek dismissal of Nguyen's ICRA claim on the ground that the relief he seeks is not available.  The only relief available under the ICRA is a writ of habeas corpus.  25 U.S.C. § 1303; *see Santa Clara Pueblo*, 436 U.S. at 61–62; *United States ex rel. Kishell v. Turtle Mountain Hous. Auth.*, 816 F.2d 1273, 1276 (8th Cir. 1987) (explaining a federal court does not have jurisdiction to award injunctive relief or damages for violations of the ICRA); *Runs After v. United States*, 766 F.2d 347, 353 (8th Cir. 1985) ("[D]espite the substantive guaranties of certain constitutional rights contained in the ICRA, the only federal relief available under the [ICRA] is a writ of habeas corpus, and thus, actions seeking other sorts of relief for tribal deprivations of rights must be resolved through tribal forums." (quoting *Goodface v. Grassrope*, 708 F.2d 335, 338 n.4 (8th Cir. 1983) (internal quotation marks omitted))).  Recognizing this, Nguyen clarifies in his response memorandum that he seeks only habeas relief for his ICRA claim.  Pl.'s Mem. in Opp'n to Cmty. Defs. at 18.  However, Nguyen does not seek habeas relief for himself.[8]

---

[7]     The Community Defendants ask for a finding that Nguyen's § 1983 claims are frivolous and note that attorneys' fees may be assessed if such a finding is made.  Cmty. Defs.' Mem. in Supp. at 22–23 and n.10 (citing *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)).  Nguyen has identified no colorable legal or factual justification for these claims, and a finding that Nguyen's § 1983 claims are frivolous therefore appears warranted.  The Community Defendants are invited to file an appropriate motion.  If that happens, a final determination on this issue will be made in the course of adjudicating that motion.

[8]     In his response memorandum, Nguyen argues that the Business Council's no-trespass notices provide a basis for habeas review.  Pl.'s Mem. in Opp'n to Cmty. Defs. at

17

Rather, Nguyen only seeks a writ of habeas corpus to "regain custody of A.J.N."  Am. Compl. at 46 ¶ a.

The Supreme Court has held that federal habeas corpus jurisdiction under 28 U.S.C. § 2254 may not be invoked to collaterally attack a state decree as to parental rights or child custody.  *Lehman Cnty. Children's Servs. Agency*, 458 U.S. 502, 510–12, 516 (1982) (stating the children were in the "custody" of foster parents, not the state "in the sense in which that term has been used by this Court in determining the availability of the writ of habeas corpus.").  In *Lehman*, the petitioner sought to "relitigate, through federal habeas, not any liberty interest of her sons, but the interest in her own parental rights."  *Id.* at 511.  The federal habeas statutes, 28 U.S.C. §§ 2241, 2255, use the term "custody" while the ICRA uses the term "detention."  Courts have recognized that Congress's choice to use "detention" rather than "custody" in § 1303 is "a meaningful restriction on the scope of habeas jurisdiction under the ICRA" and, that "detention" likely has a narrower meaning than "custody."  *See Tavares v. Whitehouse*, 851 F.3d 863, 871–78 (9th Cir. 2017).  Courts have found *Lehman* instructive in ICRA cases, however, and have generally rejected attempts by parents to challenge the propriety of a tribal court's custody determination under § 1303.  *See, e.g.*, *Weatherwax o/b/o Carlson v. Fairbanks*, 619 F. Supp. 294, 296 (D. Mont. 1985) (concluding "federal habeas corpus relief under 25 U.S.C. § 1303 is not available to test the validity of a child custody decree of an Indian tribal court"); *Sandman*

---

17–19 (citing *Penn v. United States*, 335 F.3d 786, 789 (8th Cir. 2003)).  Although Nguyen alleges that the Business Council violated his due process and equal protection rights under the ICRA, Am. Compl. ¶ 172, he does not request habeas relief with respect to those notices anywhere in his amended complaint.

*v. Dakota*, 816 F. Supp. 448, 451–52 (W.D. Mich. 1992), *aff'd*, 7 F.3d 234 (6th Cir. 1993) (explaining Indian tribes have "exclusive jurisdiction to determine the custody of Indian children in child welfare situations").

Nguyen's case is no different. He has not plausibly alleged that A.J.N. is being detained by the Community. In fact, A.J.N. is in the legal and physical custody of Gustafson. *See Wells v. Philbrick*, 486 F. Supp. 807, 809 (D.S.D. 1980) (stating "any order directed to any of the named respondents would be utterly lacking in effect, since without custody of the children, they would be unable to produce them before this Court"). Instead, Nguyen seeks to challenge the validity of the Tribal Court's custody determination. Nguyen's allegations plainly show that he seeks to relitigate his own parental rights rather than any liberty interest of A.J.N. Habeas relief under § 1303 is not available under these circumstances.

In support of his position that habeas corpus review is proper in this case, Nguyen cites *DeMent v. Oglala Sioux Tribal Court*, 874 F.2d 510 (8th Cir. 1989). *DeMent* is distinguishable. In *DeMent*, the Eighth Circuit recognized in the context of ICRA that federal habeas relief may be available where a party "does not directly attack" the tribal court's custody award but rather the dispute concerns "whether a tribal court [has] violate[d] a non-Indian's due process rights by refusing to give full faith and credit to a state custody decree." *Id.* at 515–16. Nguyen's claim does not fall within the narrow category of claims identified in *DeMent*. Nguyen alleges that, when the tribal court ruled on custody in the dissolution proceeding before it in 2019, his divorce case in California had already been dismissed in favor of tribal jurisdiction and his dissolution petition in

Hennepin County had been stayed.  Am. Compl. ¶¶ 110–11.  He does not allege the existence of any state court custody decree to which the tribal court failed to give credit.

3

The Community Defendants argue that Nguyen has failed to state a claim under the SCA because Foley[9] cannot be held liable as a matter of law for Gustafson's alleged interception of emails exchanged between Nguyen and his attorney.  Cmty. Defs.' Mem. in Supp. at 28–30.  Under the SCA, whoever "intentionally accesses without authorization a facility through which an electronic communication service is provided . . . and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system" is subject to criminal punishment. 18 U.S.C. § 2701(a)(1).  The SCA also allows "any provider of electronic communication service, subscriber, or other person aggrieved by any violation of [the act] in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind" to bring a civil action against "the person or entity, other than the United States, which engaged in that violation."  *Id.* § 2707(a).

Nguyen does not allege that Foley accessed his email account, only that Gustafson accessed it and passed the communications on to Foley, "work[ing] together to intercept [his] confidential attorney-client communications and use the same for improper influence

---

[9]   Foley is the only Community Defendant that Nguyen specifically names in the allegations supporting his SCA claim.  *See* Am. Compl. ¶¶ 56–62, 175–84.

in the Tribal court proceedings."[10]   Am. Compl. ¶ 60.   It does not appear that the Eighth Circuit or courts in this District have had occasion to address the issue, but courts across the country have declined to recognize a cause of action for "secondary liability," or conspiracy, under the SCA.   *See, e.g.*, *Vista Mktg. LLC v. Burkett*, 999 F. Supp.2d 1294, 1296–97 (M.D. Fla. 2014); *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 26–27 (D.D.C. 2012); *Broidy v. Cap. Mgmt. LLC v. Muzin*, No. 19-cv-0150 (DLF), 2020 WL 1536350, at *11 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021); *Garback v. Lossing*, No. 09-cv-12407, 2010 WL 3733971, at *6 n. 6 (E.D. Mich. Sept. 20, 2010); *Jones v. Glob. Info. Grp., Inc.*, No. 3:06-00246-JDM, 2009 WL 799745, at *3 (W.D. Ky. Mar. 25, 2009); *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004–09 (9th Cir. 2006).   Nguyen does not cite, and research has not disclosed, any persuasive authority to the contrary.   Nguyen's SCA claim therefore will be dismissed.

4

The Community Defendants argue that supplemental jurisdiction should not be exercised over Nguyen's claims for abuse of process and intentional infliction of emotional distress.   Cmty. Defs.' Mem. in Supp. at 31.   A district court "may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over

---

[10]      In his response memorandum, Nguyen asserts that "[i]t cannot be known from the facts currently available to [him] whether certain Community Defendants had access to the same accounts that Ms. Gustafson had" and that it is "highly probable that others involved in the investigation were proceeding similarly, or were attempting to access the same information."   Pl.'s Mem. in Opp'n to Cmty. Defs. at 19.   But Nguyen does not allege in his Amended Complaint that Foley herself accessed Nguyen's email account, and it is not plausible to infer that she did, absent any facts to support such an inference.

which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Barstad v. Murray Cnty.*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).  Nguyen has not pleaded any viable claim under federal law, and the relevant factors favor not exercising jurisdiction over Nguyen's tort claims.

## B

In a separate motion, Alholinna seeks the dismissal of all of Nguyen's claims against her on the basis that she is entitled to absolute quasi-judicial immunity as a guardian ad litem.  Alholinna Mem. in Supp. [ECF No. 17] at 4–11.  Nguyen counters that guardians ad litem appointed by a tribal court are not entitled to the same protections as those acting under state and federal law.  Pl.'s Mem. in Opp'n to Alholinna [ECF No. 32] at 3–12.

"An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity."  *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976).  "Where an official's challenged actions are protected by absolute immunity, dismissal under Rule 12(b)(6) is appropriate."  *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (citation omitted).

Absolute judicial immunity shields judges from liability for "judicial act[s] taken within [the] court's jurisdiction."  *Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985) (citation

omitted).[11]   This immunity extends to "certain others who perform functions closely associated with the judicial process."  *Id.* at 200; *see also Anton v. Getty*, 78 F.3d 393, 395 (8th Cir. 1996) (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)) (stating that quasi-judicial immunity applies to "officials who have duties that are 'functionally comparable' to those of judges").  Courts look to the specific conduct at issue and the nature of the duties to determine whether immunity applies.  *Robinson v. Freeze*, 15 F. 3d 107, 109 (8th Cir. 1994).  To determine whether a defendant is entitled to quasi-judicial immunity, courts also consider whether factors "characteristic of the judicial process" are present, including:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of

---

[11]   The doctrine of absolute judicial immunity has traditionally protected judges "from liability for *damages* for acts committed within their judicial jurisdiction."  *Cleavinger*, 474 U.S. at 499–500 (emphasis added) (quoting *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967)).  This immunity has been extended to suits for injunctive relief in the § 1983 context.  *See* 42 U.S.C. § 1983 (overruling *Pulliam v. Allen*, 466 U.S. 522 (1984)).  "The only type of relief available to a plaintiff who sues a judge is declaratory relief, but not every plaintiff is entitled to this remedy."  *Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 763–64 (8th Cir. 2019) (quoting *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008)).  Because a declaratory judgment "'is meant to define the legal rights and obligations of the parties in anticipation of *some future conduct*, not simply to proclaim liability for a past act,'" a complaint seeking retrospective declaratory relief from a judge "does not satisfy the definition of 'declaratory judgment' and renders declaratory relief unavailable."  *Id.* (quoting *Lawrence*, 271 F. App'x at 766).  Here, the declaratory relief Nguyen seeks is properly characterized as retrospective, not prospective.  *See* Am. Compl. at 46 ¶¶ b, c.  To the extent that Nguyen seeks injunctive relief with respect to his non-§ 1983 claims against Alholinna, those claims fail for the same reasons described in Part III.A.

precedent; (e) the adversary nature of the process; and (f) the
correctability of error on appeal.

*Cleavinger*, 474 U.S. at 202 (citing *Butz*, 438 U.S. at 512).

The Eighth Circuit has extended absolute immunity to court-appointed guardians ad

litem "based on the function of testifying before the family court" and for "providing their

reports and recommendations to the family court." *Myers v. Morris*, 810 F.2d 1437, 1466

(8th Cir. 1987) (noting guardians "were appointed to fulfill quasi-judicial responsibilities

under court direction" to aid the court in making child custody and placement decisions),

*abrogated on other grounds by Burns v. Reed*, 500 U.S. 478 (1991); *see also Dornheim v.

Sholes*, 430 F.3d 919, 925 (8th Cir. 2005).  "Guardians ad litem and custody evaluators,

like probation officers who prepare PSI reports, 'serve[] as the court's eyes and ears and

must exercise discretion in conducting [their] investigation[s] and making [their]

recommendations, without fear of subsequent civil liability.'"  *Kent v. Todd Cnty.*, No. 99-

cv-44 (JRT/RLE), 2001 WL 228433, at *8 (D. Minn. Feb. 21, 2001) (quoting *Weseman v.

Meeker Cnty.*, 659 F. Supp. 1571, 1577–78 (D. Minn. 1987)).  Guardians ad litem "are

afforded absolute immunity, even when claims of malice and bad faith in investigating and

preparing their reports are asserted against them."  *Id.* (rejecting plaintiff's argument that

quasi-judicial immunity should not apply because the guardians ad litem failed to report

materially relevant information, included false and inaccurate statements in reports to the

court, and acted outside the scope of court-appointed duties by shredding her notes).  This

approach is consistent with that of other circuit courts of appeals, as well as Minnesota

state courts.  *See, e.g., Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009); *Fleming v.*

*Asbill*, 42 F.3d 886, 889 (4th Cir. 1994); *Cok v. Cosentino*, 876 F.2d 1, 3 (1st Cir. 1989); *Gardner ex rel. Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989); *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984); *Tindell v. Rogosheske*, 428 N.W.2d 386, 387 (Minn. 1988).

Federal courts have applied these principles when considering claims made against tribal defendants.  "[A] tribal court judge is entitled to the same absolute judicial immunity that shields state and federal court judges."  *Penn v. United States*, 335 F.3d 786, 789 (8th Cir. 2003) (citing *Sandman*, 816 F. Supp. 448, 452 (W.D. Mich. 1992)).  In *Penn*, the Eighth Circuit extended absolute quasi-judicial immunity to law enforcement officers involved in serving and enforcing an exclusion order issued by a tribal judge against a nonmember.  *Id.* at 789–90; *see also Acres v. Marston,* No. 34201800236829CUPOGD, 2019 WL 8400827 at *11 (Cal. Super. Feb. 11, 2019) (concluding as alternative grounds for decision that tribal court clerks and attorneys were entitled to quasi-judicial immunity).  Nguyen has not presented, and research has not revealed, any authority that would bar extending quasi-judicial immunity to a tribal court-appointed guardian ad litem.  At the hearing on Alholinna's motion, Nguyen argued that the absence of a specific case to that effect is sufficient reason not to do so here.  But the weight of authority counsels otherwise.

Nguyen further argues that even if quasi-judicial immunity may extend to tribal court-appointed guardians ad litem, it should not be extended to Alholinna because he has alleged that she acted outside the scope of her duties by relying on falsified information and illegally-obtained communications, failing to confirm the validity of information she received, and "effectively misrepresenting facts to the tribal court" in an effort "to keep

A.J.N. a ward of the tribal court."  Pl.'s Mem. in Opp'n to Alholinna at 6, 9.  But these allegations are insufficient to bring Alholinna outside the scope of immunity because they concern only the manner in which she performed her court-appointed duties to investigate, prepare a report and recommendation for the tribal court as to what was in A.J.N.'s best interests, and testify at the child welfare proceedings.  *See Myers*, 810 F.2d at 1467 ("The absolute immunity which is accorded persons acting as an integral part of the judicial process protects them from having to litigate the manner in which they performed their delegated functions").  Alholinna is entitled to absolute quasi-judicial immunity regardless of whether she may have acted negligently, in bad faith, or with malice.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant Jody Alholinna's Motion to Dismiss [ECF No. 15] is **GRANTED**;

2. The Community Defendants' Motion to Dismiss [ECF No. 22] is **GRANTED**;

3. Nguyen's claims against the Community Defendants in their official capacities for non-injunctive relief are **DISMISSED** without prejudice;

4. Nguyen's federal claims against the Community Defendants in their official capacities for injunctive relief and in their individual capacities are **DISMISSED** with prejudice;

5.      Nguyen's claims for abuse of process and intentional infliction of emotional distress against the Community Defendants are **DISMISSED** without prejudice; and

6.      Nguyen's claims against Defendant Jody Alholinna are **DISMISSED** with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  October 27, 2021        s/ Eric C. Tostrud
                                      Eric C. Tostrud
                                      United States District Court