UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| James Van Nguyen, | File No. 21-cv-991 (ECT/TNL) |
| Plaintiff, | |
| v. | |
| Patricia Foley, Jody Alholinna, Nancy Martin, Charli R. Vig, Keith B. Anderson, Rebecca Crooks-Stratton, and Cole W. Miller, *in their individual and official capacities*, | **OPINION AND ORDER** |
| Defendants. | |

---

Jason Scott Juran and Robert R. Hopper, Robert R. Hopper & Associates, LLC, Minneapolis, MN, for Plaintiff James Van Nguyen.

Richard A. Duncan, Joshua Todd Peterson, and Sarah Vandelist, Faegre Drinker Biddle & Reath LLP, Minneapolis, MN, for Defendants Patricia Foley, Nancy Martin, Charli R. Vig, Keith B. Anderson, Rebecca Crooks-Stratton, and Cole W. Miller.

---

Pursuant to Federal Rule of Civil Procedure 54 and 42 U.S.C. § 1988(b), the Community Defendants[1] seek $21,510.50 in attorneys' fees spent obtaining dismissal of Plaintiff James Van Nguyen's § 1983 claim. ECF No. 44. The motion will be granted because Nguyen's § 1983 claim was frivolous, and the requested fees are reasonable.

*This case.* Nguyen brought this case against the Community Defendants and an independent guardian ad litem, Jody Alholina, essentially to challenge actions taken during

---

[1] The Community Defendants are Patricia Foley, Nancy Martin, Charles R. Vig, Keith B. Anderson, Rebecca Crooks-Stratton, and Cole W. Miller. They are referred to as the "Community Defendants" because they are elected leaders or employees of the Shakopee Mdewakanton Sioux Community.

Tribal Court child welfare proceedings concerning Nguyen's daughter and no-trespass orders issued by the Community's Business Council. Nguyen asserted federal claims under 42 U.S.C. § 1983, the Indian Civil Rights Act, 25 U.S.C. § 1301 *et seq.*, and the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, and claims under Minnesota law for abuse of process and intentional infliction of emotional distress. Defendants moved to dismiss Nguyen's claims for lack of subject-matter jurisdiction and for failure to state a claim on which relief may be granted, and Defendants' motions were granted. *Nguyen v. Foley*, No. 21-cv-991 (ECT/TNL), 2021 WL 4993412 (D. Minn. Oct. 27, 2021).[2]

*The dismissal of Nguyen's § 1983 claims.* Nguyen's § 1983 claims were dismissed essentially because Nguyen did not allege facts plausibly showing that the Community Defendants acted under color of state law. Because the Community Defendants' attorneys'-fees motion implicates this aspect of the dismissal order, the relevant section of the order deserves repeating here:

> The Community Defendants argue that Nguyen's § 1983 claims against them must be dismissed because Nguyen has not alleged that they acted under color of state law. Cmty. Def.'s Mem. in Supp. at 19–21. "To survive dismissal of [a] section 1983 cause of action, [a plaintiff] must have sufficiently alleged the [defendant] deprived them of a right 'secured by the Constitution and laws' of the United States, and the deprivation was caused by a person or persons acting under color of state law." *Creason v. City of Washington*, 435 F.3d

---

[2] Nguyen filed a notice of appeal of the order granting Defendants' motions to dismiss. ECF No. 51. So did the Community Defendants. ECF No. 57. As a general rule, a notice of appeal "divests the lower court of jurisdiction over aspects of the case that are the subject of the appeal." *United States v. Queen,* 433 F.3d 1076, 1077 (8th Cir.2007). However, "a district court retains jurisdiction over collateral matters, such as attorney's fees or sanctions, while an appeal is pending." *State of Mo. v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 n.3 (8th Cir. 1999).

820, 823 (8th Cir. 2006) (citing 42 U.S.C. § 1983 and *Flagg Bros, Inc. v. Brooks*, 436 U.S. 149, 155 (1978)). It is settled law that a defendant acting under tribal authority is not acting under color of state law and that "[n]o action under 42 U.S.C. § 1983 can be maintained in federal court for persons alleging deprivation of constitutional rights under color of tribal law." *Coleman v. Duluth Police Dept.*, No. 07-cv-473 (DWF/RLE), 2009 WL 921145, at *23–24 (D. Minn. Mar. 31, 2009) (quoting *R.J. Williams Co. v. Fort Belknap Hous. Auth.*, 719 F.2d 979, 982 (9th Cir. 1983)) (collecting cases); *Charland v. Little Six, Inc.*, 112 F. Supp. 2d 858, 866 (D. Minn. 2000), *aff'd* 13 Fed. App'x 451 (8th Cir. 2001); *see Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978) (recognizing that Indian tribes are separate sovereigns predating the Constitution, and therefore, are "unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority").

Nguyen does not allege that the Community Defendants are state actors, that they ever acted pursuant to any state authority, or that they ever acted in concert with any state actors. To the contrary, he alleges that the Business Council is a panel of the Tribal Government that "is responsible for the day-to-day operations of the tribe, and for implementing the decisions of the General Council" and that the Family and Children Services Department is an agency of the Tribal Government that "provides case management services for Community Member clients in tribal court." Am. Compl. ¶¶ 4–5. Nguyen further alleges that the Community Defendants are all either members of the Business Council or employed by the Family and Children Services Department and that they deprived him of his constitutional rights while acting in those roles. The only plausible inference is that the Community Defendants acted under the color of tribal law. Nguyen alleges that some Community Defendants "have authority conferred under color of federal and state law" as a result of "the federal, state and local policy of transferring custody cases to the SMSC Tribal Court." Am. Compl. ¶¶ 137, 150; *see* Pl.'s Mem. in Opp'n to Cmty. Defs. [ECF No. 33] at 13. This argument is not persuasive. Nguyen's reference to a "policy" is too vague to be plausible. If that weren't so, Nguyen does not plausibly allege how such a "policy" could have authorized or guided

3

>     any action taken in Tribal Court after such a transfer. Nguyen
>     cannot maintain his § 1983 claims.

*Nguyen*, 2021 WL 4993412 at *6–7.

*Law governing the fee-entitlement question.* "The statute involved here, 42 U.S.C. § 1988, allows the award of 'a reasonable attorney's fee' to 'the prevailing party' in various kinds of civil rights cases, including suits brought under § 1983." *Fox v. Vice*, 563 U.S. 826, 832–33 (2011). Under § 1988(b), a federal district court may "award attorney's fees to a defendant 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.'" *Id.* at 833 (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *see also Flowers v. Jefferson Hosp. Ass'n*, 49 F.3d 391, 392 (8th Cir. 1995) (same). "The Supreme Court has cautioned that 'a district court [must] resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'" *Equal Employment Opportunity Comm'n v. CRST Van Expedited, Inc.*, 944 F.3d 750, 756 (8th Cir. 2019) (quoting *Christiansburg Garment Co.*, 434 U.S. at 421–22). "So long as the plaintiff has 'some basis' for the discrimination claim, a prevailing defendant may not recover attorneys' fees." *Id.* (citation omitted). There is no question the Community Defendants are the prevailing party. The question is whether Nguyen's § 1983 claims were "frivolous, unreasonable, or without foundation" within the meaning of § 1988(b).

*Nguyen's § 1983 claims against the Community Defendants were frivolous.* "Only state actors can be held liable under Section 1983." *Youngblood v. Hy-Vee Food Stores,*

4

*Inc.*, 266 F.3d 851, 855 (8th Cir. 2001). If this rule weren't conspicuous from § 1983's text, it is manifest from innumerable federal cases. The rule is about as black letter as law gets. And (as noted) it is settled that a defendant acting under tribal authority does not act under color of state law. *Nguyen*, 2021 WL 4993412, at *6. Nguyen did not allege facts plausibly showing that the Community Defendants were state actors. He did the opposite. He alleged facts making it clear that the Community Defendants acted under color of tribal law. *See id.* at *7. Nguyen's only allegation that might be understood differently was that some Community Defendants "have authority conferred under color of federal and state law" as a result of "the federal, state and local policy of transferring custody cases to the SMSC Tribal Court." Am. Compl. ¶¶ 137, 150. This allegation cannot rationally be understood to establish a reasonable factual basis for the state-actor element of Nguyen's § 1983 claims. The allegation concerns only some Community Defendants—those involved with the Shakopee Mdewakanton Sioux Community Tribal Court. It does not answer the state-actor question as to the Community Defendants who served only on the Business Council. Regardless, the fact that a state court might generally defer to the Tribal Court's custody determinations (either by staying proceedings or transferring a case to the Tribal Court) does not make the Tribal Court "a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Nguyen cites no case or other authority that might support a "joint action" finding in these or similar circumstances.

*Nguyen's defense of the reasonableness of his § 1983 claim's merits is neither robust nor persuasive.* In response to the Community Defendants' attorneys'-fees motion, Nguyen asserts that he "stated a plausible claim that the Community Defendants were

acting under state law when they deprived Mr. Nguyen of his constitutional rights." Pl.'s Mem. Opp'n at 5 [ECF No. 52]. He doesn't explain how. His argument in support of this assertion does not address § 1983's state-actor requirement but focuses instead on his allegations that the Community Defendants violated Nguyen's rights. *Id.* at 4–6 ("Nguyen alleged that the Community Defendants abused powers granted by state and federal law . . . ."). That misses the dispositive issue. Nguyen also argues: "The Community Defendants themselves highlight the interplay between tribal and state authorities in its reference to the Minnesota Department of Human Services Indian Child Welfare Manual[.]" *Id.* at 5–6. There are two problems with this argument. First, allegations regarding this Manual appear nowhere in Nguyen's Amended Complaint. Second, if they did, Nguyen does not explain how the Manual's contents might rationally be understood to support the idea that the Community Defendants were state actors. Mere "interplay" between a state actor and some third party—be it a tribal organization, the federal government, or a private person—doesn't come close to showing that the third party is a state actor for § 1983's purposes.

*Nguyen advances unpersuasive procedural arguments.* Nguyen seems to suggest that he cannot be liable for attorney's fees under § 1988 because there has been no previous determination that his § 1983 claims were frivolous. *See id.* at 1 (stating that Community Defendants "were merely invited to 'file an appropriate motion'" and there has been no determination that claims were frivolous). But that's the point of this motion. Nguyen cites no authority for the proposition that the threshold question governing entitlement to attorney's fees under § 1988—*i.e.*, a determination of frivolousness—must precede the

filing of a motion seeking a fee award. Nguyen also says that, in a previous suit in this District, he was "invit[ed] to return to this Court after exhausting his tribal remedies," so "he had a legitimate basis upon which to return to federal court to find his remedy." *Id.* at 5 & n.1. If that happened, Nguyen might have a point. Another federal district court's invitation to Nguyen to re-file his § 1983 claims against the Community Defendants would seem to give Nguyen a reasonable basis to do just that. But that's not what happened. In *Nguyen v. Gustafson*, Nguyen sued "for injunctive and declaratory relief pursuant to 28 U.S.C. § 1331, under which non-Indians may bring a federal common law cause of action challenging tribal court jurisdiction." No. 18-cv-522 (SRN/KMM), 2018 WL 4623072, at *2 (D. Minn. Sept. 26, 2018), (citing *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850–53 (1985)). As District Judge Susan Richard Nelson described the case, Nguyen "sought a declaration that the Tribal Court lacked jurisdiction over . . . dissolution proceedings and that proper jurisdiction rests in state court[]" and "a preliminary injunction to halt proceedings in the Tribal Court." *Id.* Judge Nelson dismissed the case without prejudice for Nguyen's failure to exhaust Tribal Court remedies. *Id.* at *2–4. A review of Nguyen's Complaint in that case confirms that the Community Defendants were not parties and that the case involved no § 1983 claim and no claim for damages—only claims for injunctive and declaratory relief. *See id.*, Compl. at 1, 10 [ECF No. 1]. Nguyen's suggestion that Judge Nelson "invited" him to return to federal court with a § 1983 damages suit against the Community Defendants misrepresents Judge Nelson's dismissal order.

7

The bottom line is that § 1983's state-actor requirement is plain. Nguyen didn't just fail to allege facts supporting it. He alleged facts establishing that the Community Defendants are *not* state actors. And he has identified no factual or legal basis that might support a determination that the Community Defendants are state actors. For these reasons, Nguyen's § 1983 claims against the Community Defendants were frivolous.

*Law governing the fee award's amount.* The party seeking fees has the burden of establishing that the fees sought are reasonable and should submit evidence supporting the rates claimed and hours worked. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 437 (1983). "To calculate attorney's fees, courts typically begin by using the lodestar method, which multiplies the number of hours reasonably expended by reasonable hourly rates. When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019) (cleaned up); *see In re RFC*, 399 F. Supp. 3d 827, 846 (D. Minn. 2019) ("Generally, to determine whether an hourly rate is reasonable, courts look at the rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Trial-court judges need not "become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838. In a case like this, where only certain claims have been determined to be frivolous, § 1988(b) allows defendants "to recover reasonable attorney's fees incurred because of, but only because of,

a frivolous claim." *Id.* at 836; *see also CRST Van Expedited, Inc.*, 944 F.3d at 758 (8th Cir. 2019) (explaining the *Fox* standard). In other words, it's a "but-for" test—a defendant may "receive only the portion of his fees that he would not have paid but for the frivolous claim." *Fox*, 536 U.S. at 836; *see also id.* at 829. "[I]f the defendant would have incurred [certain] fees anyway, to defend against *non*-frivolous claims, then a court has no basis for transferring the expense to the plaintiff," but the "but-for" standard "may in some cases allow compensation to a defendant for attorney work relating to both frivolous and non-frivolous claims." *Id.* at 836–837. "[T]he dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation." *Id.* at 836.

*The claimed hourly rates are reasonable.* The Community Defendants' attorneys at Faegre Drinker Biddle & Reath LLP billed at the following hourly rates: $885 for Richard A. Duncan, a partner who has 30 years' experience in Indian law litigation; $560 for Josh Peterson, a senior associate experienced in Indian law litigation; $460 for Bethany L. Kervan, an associate with experience in Indian law; and $435 for Sarah E. Vandelist, an associate with relatively extensive education and experience in Indian law matters. Duncan Decl. ¶¶ 2–7 [ECF No. 47]. In support of their request, the Community Defendants submit the Declaration of Skip Durocher, an experienced local attorney who heads his firm's national federal Indian law practice group. Durocher testifies that the hourly rates charged by the Community Defendants' counsel are reasonable, based on his experience and familiarity with the market. Durocher Decl. ¶¶ 3–7 [ECF No. 48]. Nguyen does not challenge the hourly rate for any one lawyer. He does not offer competing expert

9

testimony. Instead, he adds each attorney's hourly rate and argues that "a combined rate of . . . $2,340 per hour" is "outrageous." Pl.'s Mem. Opp'n at 12. This approach seems unhelpful because it's not how lawyers bill. Certainly, there is no evidence that the Community Defendants' lawyers billed in this fashion or ever all worked the same hour on the same day to produce that result. Regardless, Nguyen cites no authority suggesting that his approach is appropriate or warrants reducing a claimed hourly rate. Nguyen does not identify an appropriate lower rate. On this record, informed by my own experience and knowledge of the market, the better conclusion is that the rates sought by the Community Defendants' counsel are reasonable considering the attorneys' experience and prevailing market rates.

*The claimed hours worked are appropriate and reasonable.* To recap, determining the hours worked requires ascertaining whether the time was expended "because of, but only because of, a frivolous claim," *Fox*, 536 U.S. at 836, and whether the time expended because of a frivolous claim was reasonable. The Community Defendants have identified three categories they say meet both requirements. (1) The first category includes 11.1 hours totaling $5,043.50 in fees that the Community Defendants say were "incurred solely in connection with defending the Section 1983 claim." Defs.' Mem. Supp. at 6, 9 [ECF No. 46] (citing Duncan Decl. Ex. A [ECF No. 47-1]); Duncan Decl. ¶¶ 9–10. Nguyen objects to the fact that some entries in this category include time spent working on issues other than the § 1983 claim. Pl.'s Mem. Opp'n at 7. But as part of their fee claim, the Community Defendants' counsel already reduced the hours in the objected-to entries (and others like them) to account for this concern. Duncan Decl. Ex. A. And a review of the

10

Community Defendants' submissions seems to show that unobjected-to, unreduced entries are specific to the § 1983 claims. *See id.* (2) The second category represents "general case development that [was] more costly and took longer because of, and only because of, Nguyen's bringing of a Section 1983 claim," and the Community Defendants request one-fifth of that time, which totals 20 hours and $11,967.00 in fees. Duncan Decl. ¶¶ 9–10; Defs.' Mem. Supp. at 6; Duncan Decl. Ex. B [ECF No. 47-2]. This includes entries for "tasks including drafting the motion to dismiss, reviewing background materials related to the case, analyzing the amended complaint, and preparing for and attending oral argument." Defs.' Mem. Supp. at 6. One might question whether the 80% reduction counsel proposes with respect to these hours is arbitrary. Bearing in mind that "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection[,]" *Fox*, 563 U.S. at 838, I conclude this 80% reduction is significant, non-arbitrary, and represents a reasonable award in view of my experience with the case and based on a well-educated estimate of the time spent on the § 1983 claims in relation to the other issues and claims in the case. The Community Defendants' motion to dismiss required consideration of five issues: (i) sovereign immunity; Nguyen's claims under (ii) § 1983, (iii) the Indian Civil Rights Act, and (iv) the Stored Communications Act; and (v) supplemental jurisdiction. I can say that the sovereign immunity question took the most time, but I'll add that the § 1983 claims weren't far behind and took more time than the remaining three issues. In other words, there is at least rough symmetry between the 80% reduction proposed by the Community Defendants and the time spent on these questions. There is one exception. Time spent by two attorneys traveling to and from the hearing on

Defendants' summary-judgment motions would have been incurred regardless of the presence of the § 1983 claims. On the assumption that travel was from Minneapolis to St. Paul and back, time for each lawyer (Duncan and Peterson) will be reduced by .7 hours to account for travel time to and from the hearing. Applying these reductions yields a fee award for this second category of $10,955.50. (3) The third category includes time—15.5 hours and $4,500 in fees—spent on this motion for attorneys' fees. Defs.' Mem. Supp. at 6; Duncan Decl. ¶ 11; Duncan Decl. Ex. C. [ECF No. 47-3]. "With respect to 'fees on fees,' time spent preparing fee applications is generally compensable. However, such fees should not be excessive." *Rosen v. Wentworth*, 13 F. Supp. 3d 944, 953 (D. Minn. 2014) (cleaned up and quoting *El–Tabech v. Clarke*, 616 F.3d 834, 843–44 (8th Cir. 2010)) (awarding fees, including "fees on fees," though reduced from amount requested, to plaintiff who obtained a favorable verdict on a § 1983 claim). There is no reason to think that this amount is unreasonable. The number of hours—15.5—represents roughly two days' work. This seems a reasonable amount of time because fee motions are case-specific, and the motion required reviewing time entries and culling those not related to the § 1983 claims, a labor-intensive process. Nguyen does not seem to argue that this amount is unreasonable. Instead, he argues that hours spent on the fee motion were "only incurred due to the Community Defendants' own actions." Pl.'s Mem. Opp'n at 8. That's not right. Nguyen brought the § 1983 claims, and he can't blame the Community Defendants for responding to them or seeking fees. The 15.5 hours and $4,500 in fees in this third category is reasonable and will be awarded.

*Nguyen's additional miscellaneous arguments are not persuasive.* Nguyen advances several arguments in opposition to a fee award. (1) He says the Community Defendants had the opportunity to review Nguyen's Complaint before it was filed but did not raise the state-actor issue. Pl.'s Mem. Opp'n at 8. It is true that pre-filing give-and-take between would-be civil litigants and their lawyers is usually a good thing. But the law places the responsibility of ensuring a claim's merit on the party bringing the claim, not on the party responding to that claim. Fed. R. Civ. P. 11(b). Regardless, Nguyen cites no case declining to award fees on this basis. (2) Nguyen points out that he lacks the Community Defendants' financial resources. He says this motion is "predatory" and "highlights the lengths to which the tribe will use its own courts and financial advantage to squash non-members' rights." Pl.'s Mem. Opp'n at 9. No authority supports the denial of a § 1988 attorney's-fees motion on this basis. (3) Nguyen argues that a nonmonetary sanction is more appropriate than a fee award. *Id.* at 16–17. The authorities he relies on, however, concern Rule 11. He cites no case ordering a nonmonetary consequence under § 1988, and the statute's text refers only to "a reasonable attorney's fee," casting doubt on the propriety of ordering a nonmonetary sanction here. (4) Nguyen argues that the motion must be denied because the Community Defendants have not shown that they, rather than some third party, incurred any attorneys' fees. Pl.'s Mem. Opp'n at 10–11 (discussing the definition of "incur"). Nguyen's focus on the word "incur" is misplaced. Although it appears in attorneys'-fees cases, like *Fox*, the word does not appear in § 1988(b), and Nguyen does not provide authority for the proposition that invoices or proof of what money was paid, and by whom, is required for an award under § 1988(b). "[T]he statute entitles

13

[prevailing parties] to a 'reasonable attorney's fee,' not merely recovery of fees charged." *Hall v. Sebelius*, No. 13-cv-295 (JRT/LIB), 2016 WL 424965, at *5 (D. Minn. Feb. 3, 2016) (quoting 42 U.S.C. § 1988) (rejecting argument that award plaintiffs requested should be reduced because hourly rates sought, and so requested amount, exceeded amount for which plaintiffs were actually billed). "[T]he party, rather than the lawyer, is entitled to receive the fees under § 1988(b), and . . . the statute controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer." *Astrue v. Ratliff*, 560 U.S. 586, 598 (2010) (cleaned up). The law seems clear that a federal district court need not determine who is paying the attorneys how much.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. The Community Defendants' Motion for Fees and Costs [ECF No. 44] is **GRANTED**; and

2. The Community Defendants are awarded $20,499.00 in attorneys' fees.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 6, 2022                          s/ Eric C. Tostrud
                                              Eric C. Tostrud
                                              United States District Court